171 So.2d 462

**Willie M. WOODARD**

v.

**STATE.**

**4 Div. 508.**

Court of Appeals of Alabama.

Feb. 2, 1965.

Henry B. Steagall, II, Ozark, for appellant.

Richmond M. Flowers, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

CATES, Judge.

Woodard appeals from denial of his petition for writ of error coram nobis.

Originally he was indicted May 27, 1963, on three separate true bills, each charging second degree burglary.

The next day, May 28, Woodard, attended by counsel hired by his mother, plead guilty to each indictment and asked for probation. The trial judge denied probation May 31.

Thereupon, no appeal having been noted, Woodard was taken from the Dale County jail to a place of detention within the penitentiary system to endure the punishment prescribed on his plea of guilty, viz., three consecutive terms of two years each. Code 1940, T. 45, § 32, as amended.

On November 5, 1963, Woodard filed a written petition for a writ of error coram nobis designating in his caption "Case Numbers 3841–3842–3843." Appended was an affidavit of poverty.

The solicitor filed a motion to dismiss. Many of these grounds were apt. See Rule 23, U.S.Dist.Ct.N.D.Illinois, 33 F.R.D. at 391 et seq., for information to be supplied by State and Federal prisoners seeking post conviction review in that court; also Acts 525 and 526, September 16, 1963, Laws 1963, pp. 1129, 1136.

However, on the day of the solicitor's motion being first filed, the court determined that the merits of the petition and the motion to dismiss could be heard together. Accordingly, it was ordered that the

Warden of Kilby Prison transport Woodard as soon as practicable to the Dale County jail.

On December 9, 1963, we find appellant at a preliminary proceeding:

"COURT: * * * the purpose here is not to have a hearing on the merits of your petition, but merely to determine whether or not you have an attorney and whether you are able to employ an attorney of your choice, or if the Court should appoint an attorney for you. Do you have an attorney?

"PETITIONER: No, sir, I don't.

"COURT: Are you able to hire an attorney?

"PETITIONER: No, sir.

"COURT: You do not have any bank account or any cash available to you from anyone or from any source?

"PETITIONER: No, sir.

"COURT: Your mother and family are not able to assist you in hiring an attorney?

"PETITIONER: No, sir.

"COURT: Do you desire an attorney on the hearing of the merits of this petition?

"PETITIONER: I do.

"COURT: Do you wish me to appoint an attorney for you, to represent you, one who was not an attorney in the other case?

"PETITIONER: Yes, sir.

"COURT: I have in mind Mr. Charles O. Stokes, an attorney who has practiced here over forty years and is as good a lawyer as we have in Ozark. Do you have any objection to me appointing Mr. Stokes to represent you?

"PETITIONER: Is that Mr. Charles O. Stokes?

"COURT: It is.

"PETITIONER: No, sir, I have no objection.

"COURT: All right, I have contacted Mr. Stokes this morning and he will represent you.
"PETITIONER: Yes, sir. Thank you.

"COURT: It is the order of the Court, in view of what has just transpired, that Honorable Charles O. Stokes, a practicing attorney in this County for many years, be and he is hereby appointed as the attorney to represent the defendant in the above styled cause, and further that a hearing of the petition for writ of error coram nobis be, and the same is hereby set for 9:30 o'clock A.M., at the Courthouse in Ozark, Alabama, on December 18th, 1963.

"COURT: Now understand, and Mr. Stokes will explain further to you that at a hearing on the merits that I have set, you may have witnesses summoned. Their names may be given to Mr. Byrd, and any witnesses you care to have summoned you can do so at that time, or anything else that may have a bearing on the case. Do you understand?

"PETITIONER: Yes, sir.

"COURT: Are there any questions you would like to ask at this time?

"PETITIONER: No, sir.

"COURT: That will be all at this time."

Woodard being in court on December 18, filed an amendment to his petition and the solicitor refiled his motion to dismiss.

The court took the motions to dismiss under advisement and directed that the petitioner bring on his evidence in support

of his petition. In addition to himself, Woodard called seven witnesses: the sheriff, deputies, policemen and State investigators.

A trier of fact could reasonably infer from this testimony that:

1) Woodard was, April 10, 1963, "invited" by policemen of the City of Ozark who had no warrant nor knowledge (direct or hearsay) of his having committed a felony to go with them to the sheriff;

2) Woodard was held incommunicado in the county jail some twelve to eighteen hours before confessing;

3) Woodard *undisputedly* was not before a committing magistrate until May 6, 1963, at which time he plead guilty and waived to the grand jury; and

4) Woodard plead guilty to the indictments.

There was no tendency which showed that Woodard, in confessing, did so because of any improper inducement save that of his own ipse dixit that the State investigator promised to recommend him for probation.

This confession was taken April 11, 1963. According to the endorsement on his warrant of arrest, from April 10 onwards Woodard was bailable on bonds totaling $3,000.00. On May 6, 1963, Woodard in county court waived to the grand jury. On the coram nobis hearing the court found that Woodard was represented from "shortly after his arrest, during his preliminary hearing * * * and upon his appearance in chambers * * * for the purpose of pleading guilty to the three indictments" by competent counsel.

The minute entry in evidence shows Woodard, attended by this counsel of forty years practice, on arraignment, plead guilty to each indictment.

On the coram nobis hearing Woodard did not subpoena his former lawyer. Substantially all that Woodard complains of as to his pleading guilty on arraignment on the indictment lies in his own testimony from which we excerpt:

"A. Well, I came in and they said— 'Have a seat'. And I set down there where Mr. Kemp is setting now. Mr. Matthews [county solicitor] was standing where Mr. Boswell [circuit solicitor] is seated over by the window there. Mr. Matthews says: 'Do you want to see the indictments, you have been indicted on three counts of burglary in the second degree.' 'Do you want to read the indictments?' And I told him 'No, that I didn't care anything about reading them' He said: 'Raise your right hand and I will read the indictment to you.' And then he read off the first indictment. And, when he got through reading the first indictment, Judge Sollie said: 'Do you understand the charge against you?' I said: 'Yes, I do.' He said: 'How do you plead to said indictment?' I said: 'Guilty.' He said: 'Do you have anything to say before the sentence of this court is imposed upon you?' And, I says: 'No, I do not have anything to say.' At that time Mr. Martin, W. R. Martin, said: 'Your honor, I would like [to] ask for the mercy of the Court.' Let us go back to prior to when the indictment was read. Lets go back to before the indictment was read. The Judge asked me was I represented by counsel. I told him that I was, that Mr. Martin was my attorney. He said: 'Do you wish to consult with your attorney?' When he said that, me and Mr. Martin went outside of the door, into the hallway of the courthouse, and Mr. Martin said: 'Well, you are going to plead guilty.' I said: 'Under the circumstances there don't seem to be much else to do.' He said: 'I will stand with you and ask for the mercy of the Court.' Then we returned to the courtroom.

"Q. While your lawyer, Mr. W. R. Martin was talking to you, did he ask you of the charges that had been preferred against you?

"A. Oh yes, he did ask me, he said: 'You are charged with burglary, aren't you * * * my mother had employed him'?

"Q. Did he ask you any of the circumstances of the case?

"A. No, sir.

"Q. Did he tell you that you were entitled to a trial before a jury?

"A. No, sir, he just asked me was I going to plead guilty.

"Q. And that was all that was said?

"A. That was all that was said and we returned to the courtroom.

"Q. And then is when Mr. Matthews read the indictment?

"A. Yes, sir. And after Mr. Martin had asked for the mercy of the Court, Judge Sollie said: 'On your plea of guilty, the Court adjudges you guilty of the indictment, and I sentence you to two years in the State penitentiary.' And then the other two indictments were disposed of in the same manner."

The judgment here appealed from concludes:

"The Court is of the further judgment and opinion that many of the allegations of the petitioner, after considering the testimony, lack the probability of truth, but, aside from this, and considered in their most favorable light, they are matters which could and should have been properly presented upon a trial of this case.

"It appears to the Court from the above, and from the fact that neither in the original nor in the amended petition is there an allegation that defendant is innocent of the offenses charged or show a valid defense.

"It is, therefore, ORDERED AND ADJUDGED by the Court that the motion of the State of Alabama to dismiss the original petition and the amended petition be, and the same is hereby granted."

## I.

### Scope of Coram Nobis Relief

■■ Before a State prisoner can ask a Federal court to examine the cause of his detention, he must show that he has exhausted the post conviction remedies then open to him under the State's procedure. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. This seems to mean that the failure to appeal is not fatal.[1]

■ The convict, not the State, must move for collateral relief. Comity and 28 U.S.C. § 2254, require him to exhaust the available state remedies before a Federal court will take up his case. Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934.

■ Some writers have asserted that a state must afford post conviction review. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, is cited for this proposition. Tyson, Whither: On Habeas, 24 Ala. Lawyer, 271 at 274. However, no provision of the Federal Constitution compels a state to maintain post conviction review. Hampson v. Smith, 9 Cir., 153 F.2d 417; People v. Liss, 14 N.Y.2d 570, 248 N.Y.S.2d 660, 198 N.E.2d 45.

Absent an available state remedy, all that happens is that State judges are exposed to possible criticism by Federal judges without any chance of further considering or explaining away the prisoner's claims of having been denied his constitutional rights. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. See Sofaer, Federal Habeas Corpus: The

---

1. However, in the State court the presumption in favor of judgment is less onerous under appeal than on coram nobis review. Cf. Code 1940, T. 15, § 389, against Allen v. State, 42 Ala.App. 9, 150 So.2d 399.

Isolation Principle, 39 N.Y.U.Law Rev. 78, particularly fn. 327, p. 134.

The main problem of a Federal judge often is the threshold question of what available and effective remedies remain to the prisoner to pursue in a state court. Wiman v. Argo, 5 Cir., 308 F.2d 674; United States ex rel. Martin v. Murphy, 2 Cir., 319 F.2d 897; Mahurin v. Nash, 8 Cir., 321 F.2d 662; United States ex rel. Emerick v. Denno, 2 Cir., 328 F.2d 309; and Whitus v. Balkcom, 5 Cir., 333 F.2d 496.

In 1943, for the first time, the Supreme Court of Alabama refers to the writ of error coram nobis as extant to review the factual basis of a criminal judgment. Johnson v. Williams, 244 Ala. 391, 13 So.2d 683. Though seeking only a source to rejuvenate the law, Chief Justice Gardner went, like Ponce deLeon, to Florida.[2]

Seemingly, supposing coram nobis to be too cumbersome, the Florida Supreme Court, when confronted with Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, adopted its Criminal Procedure Rule No. 1, F.S.A. Ch. 924 Appendix, 151 So.2d 634. This new remedy is frankly modeled on 28 U.S.C. § 2255, and has the advantage of having the post conviction review go back to the sentencing court. Also, no leave of an appellate court intervenes as in coram nobis. See the opinions of Mr. Justice Thornal in Roy v. Wainwright, Fla., 151 So.2d 825, Gideon v. Wainwright, Fla., 153 So.2d 299, and State v. Weeks, Fla., 166 So.2d 892.

Here the opinion of the court below has not led up to a judgment denying Woodard's petition on its merits. Rather, the order in its adjudicatory clause is one granting the State's motion to dismiss the amended petition.

■ We take this to mean that if the motion and the proof under it (or petitioner's lack of proof) exposed any substantial deficiency (rather than hypothetical ones as might be tested by demurrer), the judgment is due to be affirmed. The petitioner's evidence in such cases must be clear and convincing to the contrary. Allen v. State, 42 Ala.App. 9, 150 So.2d 399.

In Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Ex parte Fewell, 261 Ala. 246, 73 So.2d 558, and Ex parte Argo, 41 Ala. App. 442, 137 So.2d 775, we find references to the need for the petitioner to aver, not necessarily that he is wholly innocent of the crime, but that he has a valid defense to the charge.

Similarly, our four-month new trial statute (Code 1940, T. 7, § 279) requires allegation and proof of a meritorious defense. So, also, do our equity decisional precedents. Vestavia Country Club v. Armstrong, 268 Ala. 334, 106 So.2d 178 (first appeal), and 271 Ala. 294, 123 So.2d 130.

■ Culling generalities from coram nobis opinions, it seems clear that basis for equitable intervention to set aside a civil judgment at law procured by surprise, accident, mistake or fraud closely resembles the formulated grounds on which courts of law have issued coram nobis to set aside their own judgments.[3]

2. His opinion adopts "from the Florida Court" a procedure based on Hysler v. State, 146 Fla. 593, 1 So.2d 628. In Shepard's Citator, Lamb v. State, 91 Fla. 396, 107 So. 535, has twelve Alabama references, by far the most numerous outside Florida. Florida appellate judges have told the writer that the rule of precedence often used by Florida lawyers is to cite an Alabama case if there is no Florida case in point. This practice seems to have grown up due to Florida's late Chief Justice Armstead Brown's earlier having been a respected Judge of the Montgomery, Alabama, City Court.

3. Thus, in Johnson v. Williams, supra; Ex parte Seals, 271 Ala. 622, 126 So. 2d 474, and Ex parte Aaron, 275 Ala. 377, 155 So.2d 334, systematic exclusion of Negroes from grand and petty juries came as no surprise to the defense.
Analogy to claimed fraud leading to erroneous judgments could be made from the contentions advanced (but not proved) in Ex parte Burns, 247 Ala. 98,

■ Meritorious defense under the four-month statute and under the equity decisions is a sine qua non of pleading and proof in addition to alleging the ground for its frustration on original trial. Collier v. Parish, 147 Ala. 526, 41 So. 772; Persons v. Summers, 274 Ala. 673, 151 So.2d 210. A plea of the statute of limitations raises a meritorious defense. Chaney v. Headley, Fla., 90 So.2d 297. On the other hand "belief" in having a defense—not being a traversable · fact—is of no validity. Ex parte North, 49 Ala. 385.

The retroactivity of Gideon v. Wainwright, supra, was before this court on appeal from denial of coram nobis in the trial court. Since Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, was by way of coram nobis, we saw no anomaly in taking the same path. Barnes v. State, ante p. 504, 169 So.2d 313, adopted in Brown v. State, Ala.1965, 170 So.2d 504. Brown, too, was a coram nobis appeal.

Surely it would have been galling irony and the cruelest form of scholasticism to have said that a poor pauper without counsel waived presciently the predestinated opinion of the Supreme Court. A man cannot legally know a valid defense if he has no legal advice.

It seems clear that there can be a Federal constitutional right without a correlated State court post conviction remedy. Meador, Accommodating State Criminal Procedure and Federal Post Conviction Review, 50 A.B.A.J. 928. If, after judgment, there is a remedy by way of Federal habeas corpus, this then is the Hohfeldian seed of the right, though there may also be a con-

temporaneous State court remedy. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

As an intermediate tribunal, we see no gain from speculating as to the possible divergences revealed in minority opinions such as that in Ex parte Aaron, 275 Ala. 377, 155 So.2d 334.

■ Where questions of Alabama law arise, we are conformed by the Code to the decisions of the Supreme Court. T. 13, § 95. The need to allege and prove a valid defense to the indictment as a necessary concomitant to maintaining an action for a writ of error coram nobis has been declared in at least two opinions of our seniors and disapproved in none.

## II.

### The Effect of Pleading Guilty

■ A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need be advanced, except as expressly provided by statute (e. g., T. 15, § 277). It supplies both evidence and verdict, ending controversy. Wigmore, Evidence (3d Ed.), §§ 1064, 2588; Duncan v. State, 42 Ala.App. 111, 154 So.2d 302.

This plea has sometimes been criticized as a modern trial device because it is susceptible of being brought about by methods of the Inquisition. Silving, Essays on Criminal Procedure, 249.

Though innocent of the crime charged, at times a man may, like Sydney Carton in

---

22 So.2d 517 (perjured testimony); Ex parte Taylor, 249 Ala. 667, 32 So.2d 659 (coerced confession—fear blocked disclosure to counsel); Ex parte Gammon, 255 Ala. 502, 52 So.2d 369 (suppression of evidence favorable to Gammon); Ex parte Fewell, 261 Ala. 246, 73 So.2d 558 (suppression of another's confession); Ex parte Williams, 268 Ala. 535, 108 So.2d 454 (perjured testimony); Allison v. State, 273 Ala. 223, 137 So. 2d 761 (perjured testimony); Mills v. State, 275 Ala. 217, 153 So.2d 650

(denial of witnesses, etc.); Dobbins v. State, 275 Ala. 497, 156 So.2d 358 (suppression of evidence; rigged jury); Cooper v. State, 276 Ala. 492, 164 So. 2d 488 (prisoner claimed to have been drugged). Mistake, even of law (though possibly supportable as one of fact on the fiction of the clerk's making up the court's minutes from the wrong notes), is shown in Swicegood v. State, ante p. 492, 168 So.2d 624, cert. den. (Mr. Justice Lawson dubiter), Ala., 168 So.2d at 626.

Dickens's "A Tale of Two Cities," allow himself to be convicted. Kent v. United States, 1 Cir., 272 F.2d 795; United States v. Glass, 4 Cir., 317 F.2d 200. Whether he does so for the sake of another or because he feels guilty of some other equally heinous crime may pose a valid philosophical or psychological enquiry. Of necessity, a court must confine itself to the evidence of the particular.

Our law, having weathered the threats of the Star Chamber with its secret sittings to get self-incriminating depositions, has erected barriers by way of presumptions against the prosecution's use of extra judicial confessions.

As to a plea of guilty, the hurdle is not the same. Yet, at all events, it must be pronounced—like a wedding vow—soberly and advisedly.

 This plea must be in public. Our Constitution, except only in cases of rape or assault to rape, forbids the exclusion of the public from a trial. Constitution, § 169. Ex parte Wade, 207 Ala. 1, 92 So. 101. And there is every presumption indulged that a trial was had in open court. Lang v. State, 271 Ala. 1, 122 So.2d 533.

Amendment 37 precludes a defendant's pleading guilty to a felony charge within fifteen days after arrest. Code 1940, T. 15, § 263, requires that the accused give three days prior notice of intention to plead guilty to a felony. State v. Baker, 268 Ala. 410, 108 So.2d 361.

To prevent coerced or hysterically false abreactionary pleas of guilt, we have these constitutional safeguards. Also, the Code goes on to provide:

"§ 265. If the court, after hearing the plea of guilty of the defendant and the testimony offered, is of opinion that no offense has been committed, or is not satisfied beyond a reasonable doubt that the defendant is guilty, then the court may order the defendant recommitted to jail to await the action of the grand

jury, or may release the defendant on bond in an amount to be fixed by the court, or may order the defendant to be discharged." Code 1940, T. 15, § 265.

Also we find in T. 15, § 277:

"§ 277. If he pleads guilty, no special venire need be drawn, but the court must cause the punishment to be determined by a jury, except where the punishment is by law required to be fixed by the court, and may, in all cases in which a plea of guilty is entered, cause witnesses to be examined, to ascertain the character of the offense."

When a defendant is indicted he cannot, against his will, be put on trial until at least one entire day has gone by since the circuit clerk put the cause on the trial docket. Code 1940, T. 15, § 317.

 Nor should we leave out of our considering the existence of the common law power of the trial judge to permit a defendant to withdraw his plea of guilty so as to enter one of not guilty. This power we presume lasts at least for thirty days. Code 1940, T. 13, § 119.

 On all felony arraignments, it is implicit from T. 15, § 276, and the Common Law that the defendant be called to the bar, have the indictment read or explained to him and that a demand be made of him as to how he pleads thereto. Howard v. State, 165 Ala. 18, 50 So. 954; Thomas v. State, 255 Ala. 632, 53 So.2d 340; Boyd v. State, 41 Ala.App. 507, 138 So.2d 60.

 Bearing in mind that the plea of guilty serves not only as evidence for the prosecution and defense but also as a verdict upon which allocutus, judgment and sentence follow, it is clear that like a verdict the plea must, in a felony case, be in open court and in form and substance to fit the indictment. Allen v. State, 52 Ala. 391; Coleman v. State, 145 Ala. 13, 40 So. 977; State v. Bardmess, 54 Nev. 84, 7 P.2d 817.

Each of the officers who interviewed Woodard before his conviction denied

making any inducement by way of threat or promise. Hence, the only taint on the linking of Woodard's arrest, incarceration, interrogation and confession with his ultimately pleading guilty comes from his own testimony on coram nobis.

■ We recognize that a plea of guilty should ideally stand, like Caesar's wife, in candid splendor above all suspicion. Swicegood v. State, Ala.App., 168 So.2d 624[1]; Ward v. State, 156 Fla. 185, 22 So.2d 887 (officer's promise proved); People v. Codarre, 10 N.Y.2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (epilepsy vitiated plea). Thus, in Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, Stewart, J., said for the majority:

"* * * A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is ·void. A conviction based upon such a plea is open to collateral attack. See Walker v. Johnston, 312 U.S. 275, 61 · S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L. Ed. 1302; Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579. * * *"

Machibroda, however, was a motion to vacate sentence under 28 U.S.C., § 2255, and does not purport to lay down a due process standard.

Neither McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, nor Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, exposits a mandatory constitutional rule applicable to State courts.

■ Though for the sake of argument we were to concede that Woodard's constitutional rights were infringed because of the unexplained delay in bringing him before a committing magistrate for a preliminary examination, nevertheless the subsequent plea of guilty in open court constituted, prima facie, a valid waiver of

prior irregularities. People v. Smith, 23 Ill.2d 512, 179 N.E.2d 20; In re Reno, 321 Mich. 497, 32 N.W.2d 723; People v. Losinger, 331 Mich. 490, 50 N.W.2d 137, 44 A.L.R.2d 1449; State v. Daughtry, 236 N. C. 316, 72 S.E.2d 658; Smith v. State, Okl. Cr., 311 P.2d 275; United States v. Koptik, 7 Cir., 300 F.2d 19.

We also note that there is no testimony in the record to substantiate Woodard's claim that his family selected counsel who advised him to plead guilty had a deleterious conflict of interest.

We quote from three Federal cases:

Martin v. United States, 5 Cir., 256 F.2d 345:

"The conflict of interest point is not detailed in any way by appellant in his brief and it is difficult to ascertain just what was the conflict among the defendants. The trial court found as a fact that there was none. The appellant failed to raise the point when counsel was appointed for him at trial or at any time during his initial trial and not until the present motions. The court-appointed attorney stated there was no conflict of interest among the various defendants to the best of his knowledge. Also, of course, since the Court has found the guilty plea was voluntary the appellant must be said to have waived the conflict of interest theory."

Downey v. United States, D.C., 218 F. Supp. 593:

"It would certainly open a Pandora's box of troubles for the courts if the principle were established that every conviction on a plea of guilty that was based on a lawyer's mistaken advice could for that reason be set aside. Fortunately there is no such law."

Kennedy v. United States, 5 Cir., 259 F.2d 883:

---

1. Ante p. 492.

"Ordinarily, unless a convicted prisoner on habeas corpus or Section 2255 petition alleges and proves misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interests, the defendant in a criminal case is bound by the acts of his counsel. * * *"

The mere fact that one lawyer represents more than one defendant faced with indictments arising from the same transaction is not, standing alone, proof that his advice must necessarily favor one client over another. People v. Buck, 6 A.D. 2d 528, 179 N.Y.S.2d 1007. There is nothing in the record to show that Woodard demanded the right (Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977) to consult his lawyer before making any statement either to the sheriff or to the investigators of the State Department of Public Safety.

The most that could be shown as to Woodard's being held incommunicado appears in his cross-examination of the sheriff wherein the sheriff conceded that he might have broken a promise to call Woodard's mother. Any contention along this line would appear to be cumulative and of no pertinence, because it is abundantly clear that Woodard's mother was at the house when the city policemen first came to ask him to come to the sheriff's office.

Also, after he had confessed to the State investigators, Woodard went with two deputy sheriffs to his parents' home on Friday, April 13, to obtain goods given to him by his accomplice.

Thus, within forty hours after going to jail, Woodard was again at home, albeit in custody under warrant.

Cause and effect between the failure to bring Woodard before a committing magistrate and his pleading guilty on arraignment after indictment does not appear other than by the one following the other in sequence of time.

Green v. Bomar, 6 Cir., 329 F.2d 796:

"* * * The district judge held that no federal constitutional right of appellant was violated in not giving him a preliminary hearing before a magistrate. We agree.

"Assuming the appellant was not given a preliminary hearing, his constitutional rights were not violated. This does not constitute a denial of due process of law. A criminal case may be taken directly before the grand jury and an indictment returned by that body on testimony of witnesses. * * *"

The trial judge, on the record before us, would have been justified had he denied the petition on its merits.

### III.

### Conclusion

Before formally concluding, we wish to observe that Woodard has had the services of three members of the Bar. Hon. W. R. Martin represented him from shortly after his arrest, during his preliminary hearing before the county court, and on arraignment in the circuit court. On the record before us, confronted with a client who had already confessed, we think Mr. Martin's advice to Woodard to plead guilty and seek mercy comports with common sense and legal ethics. We add our encomiums to those bestowed on him by the trial judge.

On the coram nobis hearing, Woodard was represented by Hon. C. O. Stokes, who conducted an able proceeding, was searching in his cross-examination and prepared an amendment to the original petition which helped to clarify the issues. The record does him credit.

Finally, on the appeal before us, we have been greatly aided by an excellent brief filed by the Honorable Henry B. Steagall, II. Indeed, if perchance the Mallory rule, supra, becomes a requisite in State courts, Mr. Steagall's brief can be said to have been a prophetic precursor of the advent.

Accordingly, we conclude that the judgment below is due to be affirmed either upon consideration of the merits or by reason of the failure of the petitioner to aver that he had a valid defense to each of the indictments.

Affirmed.

PRICE, P. J., concurs in result.

