191 So.2d 245

**Charles David FREELAND**

**v.**

**STATE.**

**1 Div. 149.**

Court of Appeals of Alabama.

Oct. 11, 1966.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

W. Boyd Reeves, Mobile, for appellant.

CATES, Judge.

This appeal from denial of writ of error coram nobis was submitted here June 2, 1966, on written argument.

### I.

Freeland's petition for the writ was defective in that it failed to aver when and for what Freeland was originally convicted.

His complaint was (1) that a policeman without a warrant therefor searched a car owned by Robert Lee Woods seizing a shotgun therefrom; and (2) that city detectives "forced [him] under duress to make a statement * * * which stated petitioner was guilty of an alleged robbery of Spur Service Station * * *."

After counsel had been appointed for him by the circuit court, an amendment to the petition for writ of error of coram nobis

was filed. This added: (3) that on interrogation by the police petitioner was advised that if he did not sign a confession he would get a lengthy sentence whereas should he sign he would receive a minimum term; (4) that following his arrest he was held at the Mobile City Jail and was not permitted to contact legal counsel; and (5) that without counsel and without being advised of his constitutional rights he was compelled to stand in a line up for identification purposes.

## II.

On the cause coming on for hearing, Freeland refused to take the stand and sought to submit his case on the petition and amendments as verified.

The transcript of evidence shows the following as to this point:

"THE COURT: Is that the legal evidence that he is required to submit in support of his Writ?

"MR. REEVES: Your Honor, it is the evidence that we are submitting in support of his Writ. (Hands document to the court.)

"THE COURT: Fine. Now, then, Mr. Freeland, you have come down from prison—

"PETITIONER: Yes, sir.

"THE COURT: You have filed a sworn petition here in which you swear that back in June of 1964 you went to the Mobile City Police Station and was subjected to extensive interrogation by City Police Officers; that you were advised by those officers that if you did not sign a confession to an alleged robbery, you would receive a lengthy sentence, and if you signed such a confession you would receive a minimum sentence; that under said duress and upon said assurances and promises and without the benefit of advice from legal counsel, Petitioner executed said confession. Petitioner avers that the obtaining of the confession under duress and

promises of reward violated his rights under the Constitution of the United States and the State of Alabama and the Code of Alabama, and so forth. And then, also, you allege that you were not permitted to get a lawyer in violation of your rights, and that following your arrest and without benefit of counsel, and so forth, you were compelled by the officers of the Mobile Police Department to stand in a line-up for identification purposes, and so forth and so on. Now, I'm asking you again in open Court: Do you have any testimony which you wish to put on to substantiate these charges?

"PETITIONER: No, sir.

"THE COURT: You do not?

"PETITIONER: No, sir.

"THE COURT: Do you wish to testify and tell the Court anything that happened in this case?

"PETITIONER: No, sir.

"THE COURT: All right, sir. Does the State feel that it is called upon to negative just the blind affidavit of this man?

"MR. INGE: Judge, without resting, of course, we would ask that his Petition be dismissed, reserving the right to go forward with some short testimony by the officers as to what occurred at the Police Station, but I certainly don't feel that his statements are borne out by the record in stating that he did not have the benefit of legal counsel and that the confession was in any way taken involuntarily from him or used against him in the face of the fact that he had, as the Court pointed out, very competent counsel at that time, and it doesn't seem that the State would be called upon, but I do reserve the right to go forward with a scintilla of evidence in the event the Court does not grant our Motion to Dismiss it. We would move that the Petition be dismissed as being uncorroborated.

"THE COURT: Well, as far as the Court's concerned, our record shows that

where from the date of arraignment he has been represented by Counsel of his own choice, and he has made some charges here in his affidavit which, if he does not wish to substantiate those charges with any type of legal evidence or if he has no one that he wishes to come forward and carry the burden of his persuasion, I'm ready, on your Motion, to dismiss the Petition for Writ of Error—

"MR. REEVES: Your Honor—excuse me, sir.

"THE COURT: Sure.

"MR. REEVES: I think that everything that the Court has said with regard to Counsel is perhaps true, but this is not the stage of the proceedings that we are talking about, Your Honor. The stage of the proceeding that we are talking about is the time of this man's initial arrest, and with that I'm talking about the case of *Escobedo versus Illinois,* with which I am sure this Court is familiar, reported at 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].

"THE COURT: If he can bring himself within the *Escobedo Case,* Mr. Reeves, and if he wants to show where he requested certain things and if he wants to show who denied them to him, if he thinks he comes within the purview of the Escobedo Case, this Court's open; but this Court's not going to let him set down there and make an affidavit and then say, 'Now, on the basis of my affidavit, you have to grant me relief.' If he wishes to put on any testimony to bring himself within the Escobedo Case, that's what the Court's open for.

"MR. REEVES: We submit, Your Honor, that the submission of the verified Petition and Amendment thereto is sufficient to put the burden of proof on the State—or burden on the State to come forward with evidence to refute it.

"THE COURT: Do you agree with that, Mr. Inge?

"MR. INGE: Not in the face of the fact that we are not even allowed to cross-examine on his statement; he just submits a blind affidavit which in and of itself is nothing if it's in conflict with the record in whole or in part, and the Court can, in its discretion, choose whether or not it believes any part of an uncorroborated, self-serving statement of that kind.

"THE COURT: All right. Well let's bring this to a head just for Appellate purposes anyway. Just for Appellate purposes then, let's show where Mr. Freeland declines to put on any testimony in support of the Motion, and that his having declined to do that, on the Motion of the State to deny the Writ of Error, the Court DENIES the Writ and orders Mr. Freeland returned from whence he came.

"MR. REEVES: If I may say so at this time, I would like to give oral notice on behalf of Mr. Freeland of appeal; it will be filed in writing if the Court so orders.

"THE COURT: All right, we will do that, and I suppose the little discussion we had here today will be the whole record that we will have to go with your affidavit. Are you going to take it up?

"MR. REEVES: Your Honor, if he wants me to represent him, I'll take it up for him.

"THE COURT: You can take it up on the record, there wouldn't be any testimony, and if the Supreme Court says that the State has to go forward, then we will bring him down and they can go forward.

"MR. REEVES: If this Court asks me to take it forward, I will. I don't know if perhaps Mr. Freeland would prefer that someone else take it forward.

"THE COURT: I don't know of anybody who would do it any more thoroughly

than you would. Are you willing to accept the appointment?

"MR. REEVES: If the Court appoints me, yes, sir."

### III.

On appeal counsel relies on language used by the writer in Duncan v. State, 42 Ala.App.111, 154 So.2d 302; Willis v. State, 42 Ala.App. 85, 152 So.2d 883, and Ex parte Nations, 42 Ala.App. 137, 155 So.2d 320. The *Duncan* opinion states in part:

> "Oral testimony on a coram nobis hearing should only be taken where the trial judge to whom the petition with the accompanying affidavits has been submitted considers further proof necessary in the interest of preventing a miscarriage of justice to the extent that coram nobis review permits. * * *"

■ Treating Freeland's sworn allegations in his pleadings as unilateral depositions, we think the trial judge was eminently correct in dismissing the petition when Freeland refused to go forward with more detailed proof. To have granted the writ on the vague conclusionary allegations would have been a miscarriage of justice.

■ We have tested these allegations as though under the negative pregnant rule. That is, basically Freeland must answer why the original judgment of conviction constitutes a fraud on the court. Allen v. State, 42 Ala.App. 9, 150 So.2d 399; Woodard v. State, 42 Ala.App. 552, 171 So.2d 462.

Thus, illustratively, the first allegation fails to state (1) who was in control of the car—so as to show standing to resist an illegal search—(2) where in the car the shot gun was when seized—so as to show whether or not it was in open view (Thompson v. State, 41 Ala.App. 353, 132 So.2d 386; Kelley v. State, 39 Ala.App. 572, 105 So.2d 687; Smith v. State, 41 Ala. App. 528, 138 So.2d 474; Williams v. State, ante p. 343, 190 So.2d 556 (Sept. 20, 1966);

Sheridan v. State, ante p. 239, 187 So.2d 294 (hn. 2). Without proof on these points, the claim of an illegal search fails.

Also, see Adams v. State, 42 Ala.App. 664, 177 So.2d 922, as to waiver.

■ Again, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is not brought into play because there is no claim that Freeland requested counsel or was not advised of his right to remain silent. Under Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882, on trials begun before June 13, 1966, a different rule prevails. See Mathis v. State, 280 Ala. 16, 189 So.2d 564; Philpot v. State, ante p. 326, 190 So.2d 293. Hence, the second and third claims fail.

■ No attempt to connect the police putting Freeland in a line-up with his confessing is even averred. We do not equate this practice with a person being compelled to testify against himself. Nor do we find any kinship in these scant allegations which would bring this case within Wade v. United States, 5 Cir., 358 F.2d 557, if indeed the Supreme Court of the United States approves that opinion.

### IV.

Moreover, the court below in colloquy with the petitioner and counsel took judicial notice of the court's records which showed that Freeland, in open court and attended by counsel, pled guilty to the indictment and was thereupon convicted by a jury with punishment set at ten years imprisonment, adjudged guilty and sentenced by the court agreeably with the verdict.

To verify that of which the lower court could (and announced that it did) notice but which strictly we could not, the Attorney General sought a more complete record by filing a suggestion of diminution with a prayer for certiorari for the original indictment and judgment entry.

In State v. Reid, 18 N.C. 377, 382, 28 Am.Dec. 572, an indictment was moved from one court to another. A question was reserved as to the mode of amending the transcript sent by the first nisi prius court to the second. The opinion cites the general practice:

"* * * It is the duty of the court to use all the means in its power to get the transcript perfect; that is, a true copy; and not to allow either party to suffer from its inaccuracy. When the statute authorizes a trial on a transcript, it is presumed that the clerk will give the tenor of the record. But he may not; and if either party, upon affidavit or otherwise, to the satisfaction of the court, suggests a diminution, the case is not allowed to proceed further until it be ascertained that what is before the court profession to be a transcript is really so. That is usually done by a certiorari, which recites the diminution and commands the officer to certify a full and perfect transcript. * * *"

In the instant case the judge on coram nobis recited the tenor of his court's records as to the former trial on the indictment. But for us the certified originals constitute the better source.

Jones on Evidence (5th Ed.), § 139, states in part:

"The court in which a cause is pending will take notice of all its own records in such cause and of proceedings in the court relating thereto—including, in the case of an appellate court, the record on a former appeal of the cause, and the record made on the trial in the lower court. But an appellate court is not bound to notice the record of another case unless made a part of the cause under consideration—although it may do so where otherwise injustice will result. Nor will an appellate court notice the records of the various courts of first instance within the limits of its territorial jurisdiction."

In this case where the court below has taken express notice of its record of the original indictment and judgment entry showing conviction appellant's demurrer to the Attorney General's suggestion of diminution is not well taken. We forego consideration as to the office here of a demurrer. Certiorari is generally a discretionary writ.

## V.

The original judgment of conviction brings into consideration a number of other reasons as to why the petition fails to make out a theoretical case for coram nobis.

*First,* no reason is given why questions of fact known to the appellant were not presented to the trial court beforehand. Why did Freeland fail to tell his lawyer of his claim of oppression by the police?

*Second,* there is no allegation that the appellant had a valid defense to the indictment. The lack of such an averment read in the light of his plea of guilty, under some authorities, suffices to support a trial court's denial of coram nobis. See *Woodard,* supra.

A plea of guilty in open court with counsel will not be collaterally infirm merely on a claim that beforehand an involuntary confession has been extracted from the defendant. There must be an averment and clear proof of cause and effect between the confession and the plea. A mere mumbling of post hoc ergo propter hoc is deficient.

In Busby v. Holman, 5 Cir., 356 F.2d 75, Maris, J., thoroughly analyzed a hypothetical situation in which a prior coerced confession could be viewed as having permeated the proceeding so as to be the motive force to a plea of guilty. Essentially it would seem needful to establish that counsel who advised and consented to such a plea was inadequate.

■ Judge Maris illustrates the onus laid on a prisoner who follows this post conviction path:

" * * * It is not counsel who is on trial. There can be held to be a lack of the effective assistance of counsel only when it appears that counsel's assistance was so grossly inept as to shock the conscience of the court and make the proceedings a farce and a mockery of justice. * * * "

■ Theretofore, his opinion laid down this general rule of the Federal courts in cases mainly of Federal prisoners:

" * * * It is settled by a host of authorities that a judgment on a plea of guilty which has been entered · voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made."

This view accords with *Woodard*, supra (headnotes 14, 15 and 16). See also Cooper v. Holman, 5 Cir., 356 F.2d 82.

The judgment of the circuit court is due to be

Affirmed.