195 So.2d 901

**Jessie Garvin ARGO**

v.

**STATE.**

**6 Div. 219.**

Court of Appeals of Alabama.

Jan. 17, 1967.

Rehearing Denied Feb. 14, 1967.

Jessie Garvin Argo, pro se.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal from denial of coram nobis came on for submission December 8, 1966.

## I.

Appellant, who has filed his own brief, states the case to us as follows:

"At the 1960, July Term of the Circuit Court of Jefferson County, Alabama Birmingham Division, the Grand Jury returned four indictments against appellant, each charging * * * robbery, * * *

"On September 19, 1960, appellant entered pleas of guilty to assault with intent to rob in each case, and was sentenced to a term of six years in each case.

"On July 16, 1964, appellant filed a petition in the sentencing court for a writ of error coram nobis, wherein he alleged that he was not represented by counsel at the time he was arraigned upon the indictments * * * and contended that in view of the fact that the court required him to plead to the merits of the charges *in the absence of counsel, without the aid and/or representation of counsel,* such violated his statutory and constitutional right to counsel, a fair trial, equal protection and due process of law, and that the convictions and sentences are due to be set aside and vacated under the authority of Hamilton v. [State of] Alabama, 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114].

"On November 24, 1965, the State of Alabama, by and through its Circuit Solicitor, filed a motion to dismiss appellant's petition for error coram nobis.

"On December 3, 1965, the trial court commenced to hold a hearing on appellant's petition and the state's motion; the hearing being continued from time to time until April 15, 1966, at which time the court took the matter under advisement.

"On May 19, 1966, the trial court * * * [after a hearing] dismissed the petition for error coram nobis."

The State's brief contains the following as part of the Statement of Facts:

"The appellant's testimony in substance is that when counsel was appointed * * * it was not until after arraignment, and that the attorneys did not have time to confer with him prior to arraignment on September 9, 1960, but that he did talk to his attorneys on the day after arraignment. The appellant does state that he did understand that he would receive a six (6) year sentence in each case, after one-half day's negotiation, and would receive a total of twenty-four (24) years in the four cases, * * *

"Thereafter the State * * * called the * * * [four court appointed counsel],

each of whom testified that in his best judgment that they were present in open court at the time of arraignment of the appellant on September 9, 1960, and did confer with the appellant briefly before entering pleas of not guilty in behalf of the appellant at arraignment * * *. [Also they conferred] together and separately with the appellant, and upon further consulting with the District Attorney about working out an agreement, which the appellant agreed to, to withdraw his not guilty plea in each case and enter pleas of guilty based on the settlement[1] of six (6) years in each of the four cases.

"The appellant was then recalled and denied having counsel at arraignment."

## II.

We have carefully scrutinized the record and viva voce evidence.

The minutes of the sentencing court following the "docket sheets" or bench notes do not specify the time of the day when Argo was first furnished counsel. Likewise, the hour of arraignment on September 9, 1960, is not recorded.

Circuit Court Docket No. 45978 shows a typical docket sheet entry:

"Sept 9, 1960—The defendant being in open Court and having been duly arraigned pleads not guilty. Case set for trial Sep 19, 1960. King, Judge. Recorded #1 Minute Bk. Vol. 179 Pg 260.

9–9–60—It appearing to the Court that the defendant is without counsel and unable to employ counsel. Hon. Robert Lewis is hereby appointed to represent him in this case. King, Judge. Recorded #1 Minute Bk. Vol. 179 Pg. 260.

1. A "settlement" in a criminal cause we take to be a colloquialism for a recommendation which respective counsel and the defendant agree shall be submitted to the judge presiding. The court is in nowise bound by such agreement. Burton v. State, 40 Ala.App. 146, 109 So.2d 311;

Sep. 19, 1960—Ready—Defendant withdraws his plea of not guilty heretofore entered in this cause, waives a jury trial and pleads guilty to assault with intent to rob as charged, and punishment fixed at 6 years, imprisonment in the penitentiary, recommendation, Dep. Sol. McCall. King, Judge.

9–9–60—The defendant upon being asked by the Court if he had anything to say as to why sentence should not be imposed *upon him answered 'No sir.'* Judgment and sentence that the defendant be imprisoned in the penitentiary for a term of 6 years. King, Judge. Recorded #1 Minute Bk. Vol. 179 Pg. 384."

■ Coram nobis admits of proof of matters of fact not appearing of record. In *Ex parte Hamilton*, 271 Ala. 88, 122 So.2d 602, it was held that coram nobis was the remedy to attack lack of counsel at arraignment. The opinion states in part:

"* * * Hamilton was not represented by counsel at the time he was arraigned on the indictment on which he was subsequently tried and convicted. We are not here controlled by the minute and judgment entries, as was the situation on appeal from the judgment of conviction. * * *"

That opinion went on to hold that though error was made to appear, it was nevertheless without injury. It was this reasoning which the Supreme Court of the United States rejected in Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114.

In the instant record one court appointed lawyer, refreshing his recollection both from notes and from the practice observed in the trial court, testified[2] that Argo was first

Aaron v. State, 43 Ala.App. 449, 192 So. 2d 456 (Nov. 29, 1966).

2. At the coram nobis hearing held December 3, 1965, recessed to February 25, 1966. The original arraignment was September 9, 1960.

appointed counsel and then arraigned. He could not recall whether Argo wanted to plead insanity.

Another of Argo's four attorneys testified that in his best judgment the court first appointed him "then the plea [of not guilty to robbery] was given."

The testimony of one lawyer went:

"Q   Do you have a specific recollection as to whether or not you were appointed prior to arraignment?

"A   I do not know that."

However, on cross we find:

"Q   (BY MR. PENNINGTON:)   Mr. Nice, you say you don't recall with reference to the time of your appointment?

"A   No, as to whether it was preceding or whether it was just after the arraignment, I don't have any independent recollection.

"Q   Is it your recollection that it was on the day of the entry of the plea of not guilty of this defendant?

"A   My best judgment is that it was prior to the plea of not guilty.

\*       \*       \*       \*       \*       \*

"Q   But, you did not talk to to him before his entry of his original plea on the day of arraignment?

"A   No, but my best judgment is that I was appointed and then the plea was given.

"Q   Within a matter of just in the same proceeding?   I mean, during the same court session that morning.

"A   Correct, yes.

\*       \*       \*       \*       \*       \*

"Q   \* \* \* Were the pleas which were entered later after you talked to Mr. Argo

discussed with him and with the other attorneys?

"A   Yes.

"Q   Prior to the day of the trial?

"A   Yes.

"Q   And was that the extent of your participation in the preparation of the trial of the case, by discussing it in company with him and the other lawyers?

"MR. BATCHELER: I object to that, Judge, as to what preparation he made for this trial.

"THE COURT: Overrule.

"A   Well, as to the extent of the case, I talked to the defendant. I talked to, as I recall, my best judgment, to the prosecuting witness. I discussed the case with the other attorneys. We all discussed it together and the plea was then made.

"Q   Well, the question I am asking is was the pleas that were entered upon which he was sentenced later decided upon by all of you in concert?

"A   We discussed it but decided it individually.

"Q   But, it was proposed by someone?

"A   We all discussed it, what we could work out, what kind of arrangement we could work out.

"Q   It was more or less of a collective decision by all of you?

"A   And the solicitor seeing what arrangement he could make with all of the cases.

"Q   Yes, sir.

"A   And with Mr. Argo's agreement and his understanding.

"Q I believe you did say that you didn't confer with the defendant on arraignment day, the day he was arraigned?

"A I don't have any independent recollection of discussing it with him prior to his plea at arraignment."

We excerpt from the court's questioning another of Argo's counsel:

"THE COURT: Let me see if I understand something about this, Mr. Seay. Is there any question in your mind about whether or not this man ever objected to pleading guilty after you conferred with him and prior to the time he got six years in this case; was that done as a result of a conference between you and him, or was that just him saying don't plead me guilty?

"A No, Judge. He was very enthusiastic about it, that is my idea about it. Not that he wanted the plea of guilty, but he thought that it was better than taking his chances at a trial. That is the impression I got at the time.

"THE COURT: You say, not that he wanted the plea of guilty?

"A I don't mean that. I mean, I got the impression that Mr. Argo felt that the chances of a conviction and a higher sentence was probable and that he was bargaining with the solicitor's office. He wanted this at the time it was finally entered.

"THE COURT: All right.

"A By way of explanation, he gave me some names of the witnesses, character witnesses and I failed to get any response at all. Nothing that would help—"

The fourth lawyer testified that he was appointed and then Argo was arraigned with counsel present. On cross-examination the question of closing off a plea of not guilty by reason of insanity was gone into as follows:

"Q Well, didn't you say that when you enter a not guilty plea—Well, you say you don't know whether you advised him to enter a not guilty plea or not, was that your testimony?

"A No. I said that I would have entered the plea myself, and as I recall I entered the plea myself.

"Q Did you request leave to change or amend it?

"A Whether I did in this specific case or not, I cannot recall, but that was our procedure up there and it was generally understood that we had that privilege to do that if it became necessary to file any pleadings to the indictment. We had leave to do that, that is the best I remember.

"Q After the plea is entered on arraignment, is that your recollection?

"A That is my recollection. It has been some time since I have handled any of these. That is my recollection.

Q Did you, after the investigation of this case or after discussing this case the two times you did with the defendant, recommend to him or consider for him and in his behalf any pleas other than the plea of not guilty?

"A No other than the plea of guilty which was subsequently decided on, no.

"Q No other than changing not guilty?

"A None to my recollection.

"Q Do you remember discussing with Mr. Argo or in his presence with other attorneys the entry of a plea of not guilty by reason of insanity, do you remember whether anything was discussed about that?

"A No. I don't recall that.

"Q You don't recall anything about that, at all?

"A No, sir. I sure don't.

"Q Do you recall whether anything was said by him or any other attorney in

your presence, or requested that you check the Bryce Hospital records, the State Insane Hospital records?

"A No, sir.

"Q You don't recall that?

"A No, sir, I do not.

"Q But, there certainly was not anything said about that before or on arraignment day, I will say, before he entered his original plea?

"A I don't recall anything being said about it.

"MR. PENNINGTON: That's all.

"MR. BATCHELER: I believe that's all.

"THE COURT: Let me ask you a question. You have made reference to the filing or a permission to file any plea prior to trial date. Is it your present recollection that at the time you were appointed in this case that there was an expression by the Court that you would be allowed to file any plea that you wished to subsequent to arraignment, but prior to the actual date of trial?

"A That is my recollection, Judge?

Appellant was recalled to the stand and testified that on original arraignment he was in the prisoner's box "which is to the left of the judge." He was told to stand up. The first indictment was read to him and the court entered his plea of not guilty.

Then, according to Argo's testimony, the court asked him if he had counsel. To which he said, "I do not have counsel." He also stated he was unable to employ one. It was after this colloquy, Argo claims, that the court first undertook to appoint counsel for him.

This mode of arraignment and appointment was used in all four cases seriatim. It was only later, but not the same day, that the prisoner was able to confer with his new lawyers.

Argo stated that the four attorneys the next day September 10, 1960, came to the county jail. It was not until the day set for trial, September 19, that he asked them "about an insanity plea, in the jury room." This presumably before the entry of lesser guilty pleas.

Argo stated one of the lawyers told him that he "had lost that plea":

"One of the attorneys advised me that I had lost that plea and that it would be at the discretion of the Judge as to whether it could be entered and he doubted very much that he would allow it."

Reverting to Argo's examination in chief, we excerpt:

"I brought up the question of pleading not guilty by reason of insanity and I was informed—

"Q Now, did you have a basis for questioning that, asking that?

"MR. BATCHELER: Judge, I object to the basis.

"THE COURT: I will overrule the objection.

"Q (BY MR. PENNINGTON:) All right. Just tell the Court what the basis was?

"A Yes, sir. I had been in the service and possibly that I could go into the Veterans Hospital.

"THE COURT: I didn't understand that.

"A I had been in the service and possibly that I could go into the Veterans Hospital and get some treatment at that time.

"Q That was the basis for you making this request of counsel?

"A Yes, sir."

III.

The court trying the coram nobis matter made the following findings of fact:

"1. The Court finds that the petitioner was duly and legally arraigned on the

charge of indictment on September 19, 1960, before the Honorable Alta L. King. The Court finds that prior to the time that petitioner was arraigned, that attorneys were appointed to represent the defendant in each of the four cases under consideration. The attorneys present were:

"A. Honorable Robert Lewis, Birmingham in case No. 2532.

"B. Honorable George Young, Birmingham in case No. 2533.

"C. Honorable Charles Nice, Birmingham in Case No. 2534.

"D. Honorable Tom Seay, Birmingham in case No. 2590.

"2. The Court further finds that each of the attorneys which were appointed were physically present in the courtroom at the time of said arraignment on September 9, 1960.

"3. The attorneys appointed in these cases were capable and properly represented the petitioner at every phase of the proceedings and was able to work the cases out on a basis such that the punishment fixed was not only fair but generous in favor of the petitioner.

"4. The Court finds that the defendant was represented by counsel at the time of his arraignment, and that he was not deprived of any constitutional or legal rights guaranteed to him by the Constitution and laws of the State of Alabama and the United States.

"5. The Court finds that the State is entitled to have its motion to dismiss granted by reason of the failure of the petitioner to aver and establish that he had a valid defense to each of the indictments involved herein."

In cases at law tried without a jury, except where a statute expressly directs, findings of fact by a nisi prius court are in essence expressions of opinion. That is, the final judgment appealed from is referred to the evidence.

"* * * We, on review, ascribe the ruling to any one or more of the tendencies of the legal evidence, which independently or jointly, support the result below. Cooper v. Hawkins, 234 Ala. 636, 176 So. 329; Flack-Beane Lumber Co. v. Bass, 258 Ala. 225, 62 So.2d 235, 238 ('It is not material whether the trial court reached the correct conclusion in like reasoning.') See also Florida Central R. Co. v. Schutte, 103 U.S. 118, 26 L.Ed. 327." Stewart v. Dept. of Industrial Relations, 40 Ala.App. 383, 114 So.2d 274.

▪ Under the Alabama concept of the remedy afforded by the writ of error coram nobis, the prisoner must plead and prove that he had a valid defense to the original charge of which he stands convicted. Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Ex parte Fewell, 261 Ala. 246, 73 So.2d 558; Ex parte Argo, 41 Ala.App. 442, 137 So.2d 775; Ex parte Anderson, 41 Ala.App. 620, 147 So.2d 862; Woodard v. State, 42 Ala.App. 552, 171 So.2d 462 (hn. 5–8); Ex parte Davis, 43 Ala.App. 188, 185 So.2d 417; Freeland v. State, 43 Ala.App. 406, 191 So.2d 245 (hn. 7). See also Wiman v. Argo, 5 Cir., 308 F.2d 674, and Ard v. State, 42 Ala.App. 505, 169 So.2d 327.

▪ After a trial where the verdict follows disputed testimony, a court reviewing by way of coram nobis starts with the original judgment standing as an evidentiary fact of adjudicated guilt. The prisoner bears the onus of overturning this product of the merger of law of the case with verdict-found fact.

▪ Setting out, he burdens himself to adduce evidence—beyond a mere balancing of probabilities—which clearly and convincingly should satisfy the court that (a) the original judgment was tainted with fraud, actual or constructive, (b) there was no acquiescence by the defense therein, (c) a factual basis existed which if made known would prevent original judgment and (d) the failure to make this

exonerating fact known earlier is not chargeable to the prisoner. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486; Allen v. State, 42 Ala.App. 9, 150 So.2d 399; Ex parte Jett, 42 Ala.App. 602, 172 So.2d 811.

■ Coram nobis would be reduced to a mere scholastic exercise if its office were to determine whether or not some procedural nicety even under an elastic claim of constitutional right was omitted at the original trial without showing that justice has miscarried. Moot courts are useful but their writs do not run to our prison wardens.

### IV.

From noting a lack of establishing a valid defense to the four charges of assault with intent to rob, it is but a step removed to inspect the effect of the appellant's plea of guilt thereto.

■■ First, by accepting Argo's plea of guilty to this lesser included offense, the court acquitted him of the higher crime of robbery. Martin v. State, 42 Ala.App. 447, 167 So.2d 915. Such a judgment cannot be reviewed on appeal by the State. State v. Cagle, 42 Ala.App. 344, 164 So. 2d 512.

■ The punishment for robbery must be set by a jury. Ten years is the least term. Code 1940, T. 14, § 415. At the time of sentencing, the court did not have the power to specify that sentences could run concurrently. Swanger v. State, 276 Ala. 289, 161 So.2d 491.

Thus, by forever escaping the threat of the electric chair, Argo got some concession. Also it would appear that the trial judge accepted the recommendation of counsel as to the periods for which sentences were to be obeyed and endured.

At that time, Alabama accorded counsel only to indigent persons accused of a crime which could be punished capitally. Though such a charge no doubt instills sobering dread in every person, yet if it be unfounded (as we must here treat after Argo's acquittal thereof), the offer of free counsel was then a boon.

■ Certainly, we consider this record shows compliance with both Hamilton v. State of Alabama, supra, and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. We find no field of operation for the ratio decidendi of Davis v. Holman, 5 Cir., 354 F.2d 773.

We think it was a legitimate inference from the testimony of the four lawyers that the trial judge on September 19, 1960, in allowing Argo to withdraw his pleas of not guilty, in effect rearraigned him on the lesser charge.

■ Arraignment in Alabama need not partake of all the common law formalities developed in a day when reading and writing were less widespread.

Argo, in pleading guilty to assault with intent to rob, necessarily knew that this was the accusation then facing him. We need not speculate on what the posture of the case would have been had the trial judge refused to let Argo withdraw his first plea.

■ A plea of guilty in open court suffices alone to uphold a judgment of conviction. Woodard v. State, supra. See also Busby v. Holman, 5 Cir., 356 F.2d 75, from which we quoted in extenso in Freeland v. State, 43 Ala.App. 406, 191 So. 2d 245.

We conclude by quoting from a similar decision found in United States ex rel. Pizarro v. Fay, 2 Cir., 353 F.2d 726:

"PER CURIAM:

"Relator Manuel M. Pizarro was charged in two indictments handed down by a Nassau County Grand Jury on April 28, 1959 with robbery, grand larceny and assault. He was arraigned on the first indictment on February 17, 1960, at which time a not guilty plea was entered for him, and on the second indictment on February 23, 1960, when, being represented by assigned counsel, he pleaded not guilty. On June 2, 1960, relator agreed, through

his counsel, to change his plea to one of guilty to robbery in the second degree in full satisfaction of all counts in both indictments. He is presently serving a 20–30 year sentence imposed on the basis of his plea of guilty. * * *

"By pleading guilty to the charge of second degree robbery, relator waived his constitutional claim, for 'a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings against him.' United States ex rel. Glenn v. McMann, 2 Cir., 1965, 349 F.2d 1018, 1019. After consulting with counsel, Pizarro changed his plea from not guilty to guilty without challenging the ten-month delay between indictment and arraignment. He makes no allegation that he was coerced or tricked into changing his plea or that it was in any other manner involuntary. Cf. United States ex rel. Marinaccio v. Fay, 2 Cir., 1964, 336 F.2d 272. Thus, the guilty plea effectively waived whatever claim Pizarro might have had that the delay deprived him of due process of law under the Fourteenth Amendment. * * *"

The judgment of the circuit court is hereby

Affirmed.

