292 So.2d 143

**Howard TURNER**

**v.**

**STATE.**

**4 Div. 262.**

Court of Criminal Appeals of Alabama.

March 19, 1974.

———◆———

Douglas M. Bates, Dothan, for appellant.

William J. Baxley, Atty. Gen., and D. Leon Ashford, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This is an appeal from a judgment dismissing a petition of appellant-petitioner for writ of error coram nobis, in which petitioner's objective was his discharge from a judgment of conviction of robbery and a sentence to imprisonment in the penitentiary for twenty-five years. The judgment of conviction and sentence of the trial court was reversed in Turner v. State, 48 Ala.App. 439, 265 So.2d 879, which in turn was reversed on certiorari, as reported in 289 Ala. 97, 265 So.2d 883. On remand, as reported in 48 Ala.App. 754, 265 So.2d 885, the judgment of conviction and sentence was affirmed without opinion. In his petition petitioner requested appointment of counsel to represent him on the hearing. Counsel was promptly appointed by the court. On the hearing, it seems to us, counsel presented as strong a case for petitioner as possible. The same counsel represents him on this appeal with like commendable zeal and ability.

The petition charges that there was a violation of petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, by the action of the trial court, the prosecuting attorney, and appellant's trial counsel on the trial of the cited case. The contentions of petitioner therein and on the hearing of the petition, and the contentions of his counsel on the hearing and on this appeal, zero in on that part of the trial (pertaining to the cross-examination of a witness for defendant) that was considered and recited in haec verba by the Supreme Court and by the Court of Criminal Appeals in the cited opinions, which for the benefit of any and all concerned in considering this opinion, we here quote as it is found, with minor typographical differences, in the coram nobis petition:

"(Q) Now Curtis Ward, you know that you are under Oath?

"(A) Yes Sir.

"(Q) Do you know what perjury is?

"(A) What is it?

"(Q) If you tell something that is not true in answer to a question that I am fixing to ask you, it's perjury. Do you know that?

"(A) No, I didn't.

"(Q) Do you know that for telling something that is not true after you are under oath that you can go to the Penitentiary for twenty years?

"(A) I didn't know that.

"Mr. Herring: Judge that is a legal point to be——

"Mr. Baxley: Your Honor, this is cross examination.

"Mr. Herring: Well the District Attorney is——

"The Court: It is cross examination and I will allow him to go into it.

"Mr. Herring: Well, I move that the Court inform the Witness of the perjury business.

"Mr. Baxley: We would like the Court to inform him as to perjury, yes, sir.

"The Court: Give me the statute. Now, under the law of Alabama, the Statute says:

That any person who willfully and corruptly swears or affirm in regard to any material matter or thing on the trial of any person under an indictment for a felony shall on conviction be imprisoned in the Penitentiary for not less than three nor more than twenty years: Do you understand that?

"(A) I do.

"The Court: All right if you understand that, go ahead.

"(Q) Now, Joe Curtis, actually what happened, when you all came back, this defendant and Willie Mae Higgins came over to that house and told you all that they had robbed that old man, didn't they?

"(A) Not as I know of.

"(Q) You did not hear him come over there and tell you they had robbed the old man?

"(A) No, Sir, I didn't.

"(Q) Don't you know that you all went in there to that bedroom and counted that money out on the bed, you and Gwen and he and Willie Mae Higgins, and you stood there and watched it? Remember what the Judge told you. Didn't you see him count that out?

"The Court: Answer his question.

"(Q) Answer my question. Did you see them come in there and count out that money on the bed: You stand there and watch those two count $240.00 out?

"(A) I didn't see no $240.00.

"(Q) Did you see them count the money in there?

"(A) I seen them count some money.

"(Q) And he told you they robbed that man right then, didn't he?

"(A) Right."

Appellant has had at least three different appointed attorneys, one on the trial of the robbery case, another on the appeal from the judgment in that case and still another on the coram nobis hearing and on this appeal. In the petition, on the hearing thereof, and on this appeal, petitioner-appellant claims that his counsel on the trial of the case in which he was convicted failed to give him adequate and effective representation and thereby deprived him of the right to effective assistance of counsel guaranteed by the Sixth Amendment. It is stated and argued that petitioner's attorney at the time did not interpose any objections or try to protect the witness from alleged browbeating, threats and intimidation.

The validity of petitioner's contention in this respect must necessarily be tested by whether petitioner is correct in the major premise of his contention, namely, that the witness was intimidated, browbeaten and threatened in that part of the cross-examination of the witness hereinbefore quoted. This is exactly the question that was decided adversely to petitioner by the Supreme Court in the cited case, and for us to hold otherwise would constitute arrogation. We must, and gladly we will, conform what we decide here to what the Supreme Court decided there.

■ Appellant attaches great significance to that part of the opinion of the Supreme Court in which it stated:

"There is another reason why there was no error. There was no objection."

This was only one of the reasons, however, for the action of the Supreme Court. The other reason was:

"At the outset, we cannot agree that there was any threats, browbeating or intimidation of the witness Ward."

Such being true, defendant's counsel on the trial would not have had a valid objection to the conduct criticized, and his attorney is not subject to valid criticism for any failure to object to it.

In the petition some coloring matter is added by the claim, and some testimony was offered on the hearing to support it, that the witness was so shaken or frightened by the questions asked on the trial of the robbery case and the manner in which the questions were asked, that the witness did not tell the truth as to seeing defendant and another counting the money on a bed. On the hearing of the petition, the same witness testified to that effect, and petitioner testified that there was a recess on the trial of the robbery case immediately after Ward had testified and that in a conference among petitioner, his attorney and Ward, Ward said he wanted to get back on the stand and tell the truth, and

that petitioner's lawyer would not call the witness back. There was vagueness as to what specific part of his testimony the witness would change and as to the reason assigned by the attorney for not calling the witness back to testify.

On the hearing of the petition, the particular witness whose testimony is involved, Joe Curtis Ward, testified that he was on parole at the time of the trial of the robbery case and that he was afraid that his parole would be revoked if he did not testify as he did on the trial. He said that there was "hollering and shouting" and that the prosecuting attorney said, "I could send you off for twenty years." The record as quoted in the opinions of the Supreme Court and the Court of Criminal Appeals and in petitioner's petition shows that the prosecuting attorney asked, "Do you know that for telling something that is not true after you are under oath that you can go to the penitentiary for twenty years?" In contrast with what the witness Ward said as to the hollering of the prosecuting attorney, petitioner testified "Well, he didn't holler too loud at him, but he was hollering at him." This was in answer to a question by his attorney at the hearing, "Did he scream at Curtis Ward?" Petitioner was asked by his counsel at the hearing, "Do you have any other reasons why this Writ of Error Coram Nobis should be granted?" to which he answered, "Yes, sir, I have a reason why this Writ of Error Corbus (sic) should be granted. Because my case was reversed and remanded by the appeal court. It was overturned in the Alabama Supreme Court on account of my lawyer didn't object to these questions that the D.A. was asking."

Although some plumage has been added, the case as to alleged threats, browbeating and intimidation is essentially as it was when reviewed by the Supreme Court of Alabama. Notwithstanding any tendency of the additional details to bolster the efforts of petitioner, the accuracy of the testimony and petitioner's contention as to the

**338**

additional details is subject to such serious question, in view of the unreasonableness, inconsistencies and vagueness of a large part of the testimony on the hearing, as well as conflicts between material parts of that testimony and the record of what transpired on the trial, as shown by the opinions of the Supreme Court and the Court of Criminal Appeals, and by the petition for writ of error coram nobis, that we are unpersuaded that his attorney on the trial of the robbery case failed to afford him proper representation. We are not convinced that the contention of petitioner to the effect that he was denied his constitutional rights is supported by credible evidence. The judge who conducted the hearing, the same judge who presided at the trial of the case in which the judgment of conviction and sentence was rendered, determined that "in the opinion of the Court, the testimony of the petitioner did not establish that he was entitled to a Writ of Error Coram Nobis."

If the testimony on the coram nobis hearing is to be given its full face value, it affords a more graphic picture of what took place than the language of the record as quoted in the two mentioned opinions and in the petition, but it can be observed from the language itself, considered by both courts on appeal, that the cross-examination of the witness by the prosecuting attorney could hardly have been with soft words or in a dulcet manner.

■ An issue that has been fully considered and finally adjudicated cannot furnish a valid basis for a petition for writ of error coram nobis. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486, cert. denied 377 U.S. 919, 84 S.Ct. 1185, 12 L.Ed.2d 188; Ex parte Seals, 271 Ala. 622, 126 So.2d 474, cert. denied 366 U.S. 954, 81 S.Ct. 1909, 6 L.Ed.2d 1246; Swain v. State, 285 Ala. 292, 231 So.2d 737, vacated in part (as to death penalty) 408 U.S. 936, 92 S.Ct. 2860, 33 L.Ed.2d 753; Holden v. State, 47 Ala.App. 164, 251 So.2d 782; 24 C.J.S. Criminal Law § 1606(10).

■ There are additional, independent considerations supportive of the judgment from which this appeal was taken. Even if we should give more credence than we do to the contention of petitioner that the testimony of the witness Ward on the trial of the robbery case was false in the respect claimed, we would not be convinced that such falsity was a substantial factor in producing the conviction of defendant. The burden was upon petitioner to establish his right to relief by clear, full and satisfactory proof. Robinson v. State, 280 Ala. 569, 196 So.2d 415; Vincent v. State, 284 Ala. 242, 224 So.2d 601; Eagen v. State, 280 Ala. 438, 194 So.2d 842. This necessarily includes as to a claim of falsity of testimony the requisite proof not only that the testimony was false but also that if the truth had been made known to the judge and jury at the trial, the judgment complained of would not have been rendered. Applicable is the statement in Argo v. State, 43 Ala.App. 564, 195 So.2d 901, cert. denied 280 Ala. 707, 195 So.2d 909, cert. denied, 389 U.S. 865, 88 S.Ct. 129, 19 L.Ed.2d 136, as follows:

"After a trial where the verdict follows disputed testimony, a court reviewing by way of coram nobis starts with the original judgment standing as an evidentiary fact of adjudicated guilt. The prisoner bears the onus of overturning this product of the merger of law of the case with verdict-found fact.

"Setting out, he burdens himself to adduce evidence—beyond a mere balancing of probabilities—which clearly and convincingly should satisfy the court that (a) the original judgment was tainted with fraud, actual or constructive, (b) there was no acquiescence by the defense therein, (c) a factual basis existed which if made known would prevent original judgment and (d) the failure to make this exonerating fact known earlier is not chargeable to the prisoner. Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486; Allen v. State, 42 Ala.App. 9, 150

So.2d 399; Ex parte Jett, 42 Ala.App. 602, 172 So.2d 811."

The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.