ON REHEARING
While serving his sentence in the Lauderdale County Jail the appellant allegedly discovered that his brother, Joe Pitts, and Carrol "June Bug" Clemmons were the two masked men who robbed Mattie Turner on February 15, 1976. The appellant had been convicted of this robbery and sentenced to ten years' imprisonment. His judgment of conviction was affirmed by this court without published opinion. Pitts v. State, Ala.Cr.App., 8 Div. 871 (Ms. March 29, 1977). This is an appeal from the circuit court's denial of a petition for writ of error coram nobis.
On the trial of the appellant for robbery the state's evidence tended to show that the appellant and "June Bug" Clemmons entered the home of Mattie Turner around ten o'clock on the night of February 15, 1976, and committed an armed robbery. The testimony of Mrs. Turner was verified by Leonard Koger, a guest in her house that evening. Both Mrs. Turner and Mr. *Page 738 
Koger positively identified the appellant as one of the robbers.
While the appellant denied any knowledge or participation in the robbery, no alibi evidence was presented. The entire thrust and basis of the defense was that Mrs. Turner was confused as to which one of the six Pitts brothers committed the robbery. Early Pitts testified that Mrs. Turner had told him that she was robbed by Joe Pitts, "the one that has a scar on his face". Joe Pitts did, in fact, have such a scar. Deputy Sheriff Lanny Jackson of Lauderdale County testified that Mrs. Turner told him that "it was the youngest one with the scars on his face". Though Mrs. Turner did not say his name was Joe she agreed that it was "after the other fellow came up with a name".
Joe Pitts admitted that he and Clemmons were at Mrs. Turner's house for fifteen or twenty minutes on the afternoon of the day of the robbery. However he stated that he did not return that night and did not rob Mrs. Turner. He did not know if the appellant went to Mrs. Turner's that day.
Wendell Pitts, the appellant, testified that he did not commit the robbery and denied ever going to Mrs. Turner's that Sunday.
(Direct Examination of Wendell Pitts)
 "Q. Were you at her house, I will ask you this question, were you at her house at anytime on the Sunday she claims she was robbed which has been identified as the 15th day of February, 1976?
"A. No, sir. I was not.
"Q. Were you there sometime in the afternoon?
"A. No, sir."
* * * * * *
 "Q. Were you down there around her house with June Bug anytime that afternoon?
 "A. No, I wasn't. It was my brother that was with him."
At the evidentiary hearing in support of the petition for writ of error coram nobis new witnesses were presented to impeach Mrs. Turner's identification of the appellant. The appellant's trial attorney, Bryce U. Graham, testified that he investigated the case thoroughly and had no additional information "regarding guilt or innocence per se" that was not presented at trial until after the judgment was affirmed.
The appellant's sister, Reba Phillips, testified that her brother Joe Pitts confessed to having robbed Mrs. Turner after the appellant was already in jail and the judgment of conviction had been affirmed on appeal.
Joe Pitts, after being advised of his constitutional rights by the court and appointed counsel, freely admitted the commission of the robbery for which his brother stood convicted. He admitted that he perjured himself at the original trial and verified the authenticity of a written confession he had made for the attorney of the appellant. Other witnesses verified facts contained in this confession which would tend to incriminate Joe Pitts. Archie Brown stated that several days before the robbery Joe borrowed two rifles similar to the ones used in the robbery. Mrs. Nell Brown testified that on the night the robbery occurred, and at a time which was after the robbery had been committed, Joe paid her forty dollars he owed her.
The evidentiary hearing was continued to permit the presentation of further testimony. Upon commencement of the hearing it was stipulated that Carrol "June Bug" Clemmons was in the Lauderdale County Jail awaiting trial on the robbery charges. After the first evidentiary hearing Joe Pitts had been indicted for perjury and robbery arising from the same factual situation as the robbery for which the appellant was convicted. He pled guilty in both cases and was sentenced to ten years for robbery and two years for perjury.
The trial judge denied the petition "inasmuch as the Defendant-Petitioner has failed to meet the burden of submitting clear, full, and satisfactory proof of his assertions on which relief should be granted".
The office of the writ of error coram nobis, under Alabama law, is to bring to the *Page 739 
attention of the court for correction an error of fact, one not appearing on the face of the record, unknown to the court or party affected, and which, if known in time, would have prevented the judgment challenged, and serves as a motion for a new trial on the ground of newly discovered evidence. Tillis v.State, 349 So.2d 95 (Ala.Cr.App.), cert. denied, 349 So.2d 100
(Ala. 1977); Groce v. State, 48 Ala. App. 709 at 710, 711,267 So.2d 499 (1972).
Under the decisions of this court and the Alabama Supreme Court,
 "coram nobis is not some `probable cause' hearing at which the trial judge determines whether the petitioner/defendant should be accorded a new trial so that the trier of fact will have the benefit of the additional testimony.
 "To the contrary, these decisions clearly show that the trial judge must `believe' the testimony and that the burden on petitioner is to submit clear, full and satisfactory proof of his assertions for relief."
Seibert v. State, 343 So.2d 788 at 790 (Ala. 1977).
The mere existence of a confession of guilt by one other than the applicant for the writ of error coram nobis will not furnish a sufficient reason for its issuance. Ex parte Fewell,261 Ala. 246, 73 So.2d 558 (1954); Ex parte Reliford,37 Ala. App. 697, 75 So.2d 90 (1954).
The discovery, at a time subsequent to the date of the trial, that testimony which was introduced thereat was perjured may not be sufficient to support a granting of the writ or a motion for new trial. Taylor v. State, 266 Ala. 618, 97 So.2d 802
(1957); Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, cert. denied, 295 Ala. 430, 325 So.2d 539 (1975); Wallace v. State,41 Ala. App. 65, 124 So.2d 110, cert. denied, 271 Ala. 701,124 So.2d 115 (1960). "Those experienced in the administration of criminal law well know the untrustworthy character of recanting testimony." Ex parte Burns, 247 Ala. 98 at 100, 22 So.2d 517,519 (1945).
 "[R]ecanting testimony is exceedingly unreliable, and is to be regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." 24 C.J.S. Criminal Law § 1454, p. 187.
The burden upon the petitioner seeking a writ of error coram nobis to establish his rights of relief by clear, full, and satisfactory proof, necessarily includes, as to a claim of falsity of testimony, the requisite proof not only that the testimony was false but also that if the truth had been made known to the judge and jury at trial the judgment complained of would not have been rendered. Turner v. State, 52 Ala. App. 334,292 So.2d 143 (1974).
The writ is not intended to relieve a defendant from his own negligence. Facts known to the accused at the time of trial, and not brought to the court's attention through his negligence, afford no ground for relief. Adams v. State,281 Ala. 432, 203 So.2d 448 (1967); Eagen v. State, 280 Ala. 438,194 So.2d 842 (1967).
In contrast to his testimony at trial, at the coram nobis hearing the appellant testified that he had been to Mrs. Turner's on the afternoon of the robbery. In stating what his brother Joe told him in confessing the robbery, the appellant testified:
 "Well, he (Joe) just said the day after, the night after we was there that day, they went back and robbed her."
* * * * * *
 "Well, he just said the day after — the night after we was there that day — we was at Mattie's and we went from Mattie's to Nellie's. I took him to get his car and he was on the way back there, back after Clemmons or going somewhere and met up with him."
In his written confession, Joe Pitts stated:
 "On the date of Sunday, February 15, 1976, I was with Wendell Pitts and Carrol Clemmons, Jr. somewhere in the afternoon around 4:30 P.M. and we stayed there (Mattie Turner's) a few minutes. There were several negros present including *Page 740 
some boys I understood to be Kogers. I know this because one of the billfolds had the identification of a Koger boy in it. We all had a drink of whiskey and beer there and left and went to Nellie's place. We got a beer there and when I paid for this, I didn't have any more money. Wendell and I went outside and Wendell said he had to go home. We asked Carrol if he was ready and he did not come out, so Wendell and I left together in Wendell's car, a 1967 Ford, 4-door white. We left Carrol there at Nellie's. There was a boy (L.C. Vaughn) there who lived close to Nellie. He was in a white, 1964 2-door hardtop. Carrol was talking to him when we left. He worked at Godsey Tire. Wendell drove me to Bluff Creek Spring where I picked up my car, a 1967 Olds, Delta 88, 4-door light green. When we left there it was getting dusky dark."
Joe then met Clemmons and the two men decided to rob Mattie Turner. Joe stated that they drove to Mattie's in his green Oldsmobile though, at trial, all the testimony indicated that the robbers escaped in a white automobile. After the robbery Joe returned Clemmons to Vaughn's white Ford on the top of Bluff Creek Hill. Vaughn was in his automobile "passed out".
Vaughn testified that he passed out at Nellie's after drinking, that Clemmons was driving his automobile and that the last thing he remembered before he blacked out was Clemmons saying he was going to get some money. The next thing Vaughn remembered was Clemmons jumping out of the car and running off when the police came the same night of the robbery.
A consideration of the testimony of Bryce U. Graham convinces this court that he had no information, other than that disclosed by the state's witnesses, that the appellant was at Mattie's with his brother and Clemmons on the afternoon of the robbery.
Repudiated testimony, especially where admitted to be perjured, is to be regarded with suspicion and caution. A petitioner will be hard pressed to convince this court of the error of a trial court in denying a petition for writ of error coram nobis where the recanted testimony of an admitted perjurer which appears to exculpate the accused also indicates that the accused swore falsely at trial. If the confession of Joe Pitts is a true account of events, then the appellant is guilty of perjury at his trial. However if the trial testimony of the appellant is true and he did not go to Mattie's that Sunday, Joe Pitts has fabricated his confession or at least a portion thereof. Thus, it appears that either the appellant testified falsely at trial or that he was attempting to defraud the court in the coram nobis hearing.
Furthermore, if we are to believe the facts as related by Joe Pitts, as the appellant would have us do, it appears that the appellant failed to use due diligence and failed to make every reasonable effort to produce all his evidence at the trial. This neglect can only be attributed to the appellant and he must bear the burden for the deception. This, in itself, constitutes grounds for denying the petition. Mathis v. State,281 Ala. 424, 203 So.2d 442 (1967); Butler v. State, 279 Ala. 311, 184 So.2d 823 (1966). Effective representation and defense demands that a client disclose all known facts to his lawyer.
At a hearing on a petition for writ of error coram nobis, the credibility of witnesses and the weight to be given their testimony are for the trial judge. Seibert, supra. This court is most reluctant to overturn and disregard the trial judge's finding that the petitioner failed to establish his right to relief by clear, full, and satisfactory proof where repudiated and perjured testimony is involved.
The law abhors perjured testimony and views with suspicion recanted statements made by a witness under sacred oath. Under the facts of this case the trial judge acted well within the bounds of his judicial discretion in finding that the appellant had not convinced the court of his right to relief.
Appellant's request for oral argument was denied by this court due to the failure of his retained counsel to comply with the time limitations for the filing of his brief *Page 741 
under Rule 31 of the Alabama Rules of Appellate Procedure. However that brief was considered in reaching our decision affirming the judgment without opinion.
We have carefully reviewed the record on appeal including the record submitted on the appellant's conviction for robbery. Our study convinces us that under the law the action of the trial court must stand.
APPLICATION FOR REHEARING OVERRULED.
All Judges concur.