CLARK, Retired Circuit Judge.
This is an appeal from a denial of a petition for writ of error coram nobis, which petitioner filed soon after the denial by the Alabama Supreme Court of her application for writ of certiorari to the Court of Criminal Appeals, which had affirmed her conviction of receiving, retaining, or disposing of stolen property. Goodman v. State, Ala.Cr.App., 401 So.2d 208, cert. denied, 401 So.2d 213 (1981). As explained in the opinion on that appeal, the indictment was for receiving stolen property in the first degree and the conviction was for receiving stolen property in the second degree by reason of the fact that the evidence showed that the value of the property alleged to have been stolen did not exceed the $1,000.00 required as the minimum value of property to support a charge of receiving stolen property in the first degree. Code of Alabama 1975, § 13A-8-17.
The basic allegation in the coram nobis petition was that defendant’s “conviction was based in part on the testimony of Witness Chris Hobbs, said testimony being per *1265 jured and false” and that the “State of Alabama had knowledge of the perjured testimony at the time of the trial.”
As supportive evidence for the crucial allegations in the petition as to the charge of “perjured and false” testimony offered by the named witness, appellant relies upon what some witnesses on the hearing of the petition testified as to what the witness Chris Hobbs said to Connie Sue Fuller soon after Chris Hobbs had testified on the trial of the case. Connie Sue Fuller testified on the hearing of the coram nobis petition as follows:
“I was sitting on the bench and he walked up to me and he said — let me get it exact — he says, T hope I didn’t hurt Carol[1] by testifying against her.’ I said, ‘Well, if you told the truth, you didn’t.’ I said, ‘You did tell the truth, didn’t you?’ He said, ‘No, I’m not getting into it any more than I have to.’ ”
There was evidence on the hearing of the coram nobis petition that at least two law enforcement officers of the City of Montgomery, who were attending the trial as witnesses, reported to the prosecuting attorney what they understood Chris Hobbs said to Connie Sue Fuller in substantially the language given by Connie Sue Fuller. The information did not come to the attention of the court during the trial of the case.
Chris Hobbs did not testify on the hearing of the petition for writ of error coram nobis.
The law has been clearly established on the issue now presented. Summers v. State, Ala.Cr.App., 366 So.2d 336, 341-343 (1978), cert. denied, 366 So.2d 346; King v. State, Ala.Cr.App., 349 So.2d 620, 621 (1977), cert. denied, 349 So.2d 621, with citations of authorities, suffice, we think.
In King v. State, supra, at 349 So.2d 621, we find:
“In Ex parte Brannan, 41 Ala.App. 500, 139 So.2d 349 and Horsley v. State, 42 Ala.App. 567, 172 So.2d 56, this Court held that to obtain coram nobis relief from a conviction on the ground of perjured testimony the testimony must be shown to have been knowingly used by the prosecution and the convict must not have been negligent.”
In Summers v. State, supra, at 366 So.2d 343, it is stated:
“In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege and prove (1) that the testimony was perjured; (2) that the perjured testimony was on a matter of such importance that the truth would have prevented a conviction. Ex parte Reliford, 37 Ala.App. 697, 75 So.2d 90 (1954); (3) that the prosecution had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue ...”
The trial judge was in a better position than the court on appeal to determine the strength of the evidence on the hearing on the coram nobis petition that Mr. Hobbs had committed perjury as a witness for the State on the trial of the case. The judge on the hearing of the petition was the judge who presided on the trial of the case. There is some difference between the language of one witness who testified on the hearing as to what Chris Hobbs had said to her and the testimony of the only other witness on the hearing as to what he had heard Chris Hobbs say. One witness testified that in answer to her question to Hobbs, “You did tell the truth, didn’t you?” Hobbs replied, “No, I’m not getting into it any more than I have to.” The other witness testified that he heard Hobbs say, “That he had to lie on the stand.” The trial judge could well have determined that the ambiguity of one witness as to what Hobbs had said and the vagueness of the paraphrase of the other witness as to what Hobbs had said combined to keep the evidence from being strong enough to convince, the trial judge that Hobbs had sworn false *1266 ly on the trial. Neither witness as to what Hobbs had said testified on the hearing of the petition that any part of Hobbs’ testimony on the trial was untrue in his testimony. His testimony on the trial consisted of approximately ten transcript pages.
There is no contention that the prosecution had any knowledge or any reason to believe until after Hobbs had testified that any of his testimony was false. The District Attorney at the time of the trial, who testified on the hearing on the call of the petitioner, testified:
“Richard, I don’t recall whether or not I talked to them about that during the trial or after the trial. At some point, that allegation came to my attention.
“Q. And did they tell you that one of the witnesses at trial had advised that he had perjured himself?
“A. Richard, I recall that that allegation was made. I don’t know who brought it to my attention or when it was brought to my attention. I know the allegation was made.”
The police officer who heard the statement said:
“We talked with the prosecutor — I don’t recall if it was during the trial or after the trial ...”
The police officer, who was with the officer who overheard the statement of Hobbs, testified on the hearing that the matter was called to the attention of the prosecutor. As to the time it was called to the attention of the prosecutor, the witness said:
“As my recollection is, it was during the course of the trial. At what point, I don’t remember, no, sir.”
Whatever evidence there was from which it could be inferred that either of the first two elements of a valid ground for a petition for writ of error coram nobis pertaining to the alleged perjury that met the requirement of either the first or the third element set forth above in the statement quoted from Summers v. State, supra, was weak and inconclusive. There was no evidence that provided the second element set forth in the cited case, that the alleged perjured testimony “was on a matter of such importance that the truth would have prevented a conviction.”
The trial court was not in error in denying the petition; its judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. The name “Carol” is found at times in the transcript and the record, particularly on the first page of the record on appeal, instead of the name “Carolyn,” the name usually stated in the transcript and record proper as the given name of the appellant.