This is an appeal from the denial of a petition for writ of error coram nobis.
The appellant, Donald Wadsworth, was indicted in St. Clair County for first degree robbery and tried three times. In the first trial, the prosecutor's remarks occasioned a mistrial. A deadlocked jury caused a mistrial in the second trial. Co-defendant Steve McCullars did not testify in the first two trials but testified against the appellant in the third trial. That third trial resulted in a conviction which was affirmed on appeal. Wadsworth v. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188
(1984).
The robbery which is the basis for the underlying conviction in this coram nobis proceeding was committed by the appellant, his brother Ronald, and Steve McCullars. The appellant was sentenced to twenty years' imprisonment. Ronald Wadsworth was sentenced to thirty years' imprisonment. Wadsworth v. State,475 So.2d 653 (Ala.Cr.App. 1985). McCullars pleaded guilty and received a sentence of twenty-five years' imprisonment. McCullars was also facing a capital robbery-murder charge in Walker County. After his testimony against the appellant he pleaded guilty to murder and was sentenced to life imprisonment in that case.
In his coram nobis petition, the appellant alleged that McCullars' testimony against him was perjured and that McCullars did have an agreement with the State in exchange for his testimony against the appellant in the St. Clair robbery case. In this Court's opinion in Wadsworth, 439 So.2d at 793, we observed that on cross-examination of State witness McCullars, defense counsel "attempted to show that the witness had made a deal with the authorities in exchange for his testimony against the defendant."
For clarity and accuracy, this Court has gone to theoriginal record on appeal of the appellant's trial. This Court can take judicial notice of its own records. Shadle v. State,284 Ala. 138, 140, 222 So.2d 722 (1969); Hamm v. State,439 So.2d 829, 831 (Ala.Cr.App. 1983). At that trial, McCullars admitted his participation in the robbery with the Wadsworth brothers. He also testified that he had been promised no leniency in either St. Clair or Walker County to testify against the defendant in the St. Clair robbery case. He admitted that he had made a "deal" in the Walker County capital robbery-murder case to cooperate in that case in return for a sentence of "life without parole." McCullars stated that St. Clair County Sheriff Clemons Roe had "made that straight — no deal at all" in exchange for his testimony against the appellant and that the St. Clair County District Attorney Fitzhugh Burttram never made "any deal or any insinuation that [he] would get off and not be prosecuted."
At the hearing on the coram nobis petition, McCullars recanted his former testimony regarding any deal made in connection with the St. Clair robbery. He testified *Page 574 
that Sheriff Roe, in the presence of District Attorney Burttram, promised him that he would not be charged if he testified against the appellant. After he testified, and despite the Sheriff's promise, McCullars was charged with the robbery, pleaded guilty, and received a twenty-five-year sentence to run concurrently with his life sentence in Walker County. However, McCullars also stated that the testimony he gave concerning the "facts and circumstances surrounding the robbery itself, were . . . true and correct."
At the coram nobis hearing, Danny Bunt, an inmate of the St. Clair County jail, testified that before the appellant's trial he had heard McCullars state that the District Attorney "was trying to get a deal if he would testify, they would drop the charge." Bunt also heard McCullars state that "he didn't want to tell a lie, but since he was facing that charge, he didn't care what happened."
At that hearing, the District Attorney of Walker County, Charles Baker, testified that on the robbery-murder charge in Walker County an agreement was reached and McCullars pleaded guilty and was sentenced to life with parole, the same sentence the "other three defendants" in that case received. The District Attorney further testified that the agreement in Walker County had "absolutely" nothing whatsoever to do with McCullars testimony against the appellant: "Absolutely not. There was never any discussion whatsoever to that."
Frank Cole, an investigator for District Attorney Baker, testified that McCullars told him about "some robberies over in St. Clair County" and "wanted some help." Cole stated he told McCullars "there was nothing I could do about it. I told him I would let the D.A. and the Judge know he cooperated with us. I told him he would have to discuss any deals with the authorities of St. Clair County."
Although Sheriff Roe did not testify at the coram nobis hearing, he did testify at the appellant's trial when called as a rebuttal witness by the State. There, he unequivocally and positively stated that he had "never made [McCullars] any offer"; "I made him no promise of any type of immunity in no way," and that neither did District Attorney Burttram in his presence.
Our review of the record of the appellant's trial and his coram nobis proceedings convinces us that he has not sustained his burden of proof:
 "In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege and prove (1) that the testimony was perjured; (2) that the perjured testimony was on a matter of such importance that the truth would have prevented a conviction. Ex parte Reliford, 37 Ala. App. 697, 75 So.2d 90
(1954); (3) that the prosecution had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Ex parte King, 349 So.2d at 621; Horsley v. State, 42 Ala. App. at 569, 172 So.2d 56. "In a coram nobis proceeding the petitioner bears the burden of submitting clear, full and satisfactory proof of matters which, had they been timely submitted at trial, would have prevented a judgment of conviction. Champion v. State, 45 Ala. App. 188, 227 So.2d 818 (1969). This burden extends beyond a mere balancing of probabilities to clearly and convincingly satisfy the court that the original judgment was tainted with fraud, actual or constructive; that there was no acquiescence by the defense therein; that a factual basis existed which if made known would have prevented the original judgment; and that the failure to make such exonerating fact known earlier was not chargeable to the petitioner. Argo v. State, 43 Ala. App. 564, 570, 195 So.2d 901, cert. denied, 280 Ala. 707, 195 So.2d 909 (1967).
 "The degree of proof is 'highly exacting as to facts "and always means more than reasonably satisfying." ' Burden v. State, 52 Ala. App. 348, 350, 292 So.2d 463, 465 (1974). The petitioner must convince *Page 575 
the trial judge of the truth of his allegation and the judge must 'believe' the testimony. Seibert v. State, 343 So.2d 788 (Ala. 1977). The petitioner on coram nobis is also confronted with the burden of rebutting the presumptions, among others, of the correctness of the judgment of the trial court, Ware v. State, 44 Ala. App. 679, 219 So.2d 910 (1969), and the truthfulness of the testimony of the witnesses for the prosecution. Edson v. State, 53 Ala. App. 460, 301 So.2d 226
(1974)." Summers v. State, 366 So.2d 336, 343
(Ala.Cr.App. 1978), cert. denied, Ex parte Summers, 366 So.2d 346 (Ala. 1979).
Even were we to conclude that McCullars perjured himself at the appellant's trial, that fact, standing alone, would not entitle the appellant to a new trial.
 "The discovery, at a time subsequent to the date of the trial, that testimony which was introduced thereat was perjured may not be sufficient to support a granting of the writ or a motion for new trial. Taylor v. State, 266 Ala. 618, 97 So.2d 802
(1957); Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, cert. denied, 295 Ala. 430, 325 So.2d 539
(1975); Wallace v. State, 41 Ala. App. 65, 124 So.2d 110, cert. denied, 271 Ala. 701, 124 So.2d 115
(1960). 'Those experienced in the administration of criminal law well know the untrustworthy character of recanting testimony.' Ex parte Burns, 247 Ala. 98
at 100, 22 So.2d 517, 519 (1945).
 " '[R]ecanting testimony is exceedingly unreliable, and is to be regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury.' 24 C.J.S. Criminal Law § 1454, p. 187.
 "The burden upon the petitioner seeking a writ of error coram nobis to establish his rights of relief by clear, full, and satisfactory proof, necessarily includes, as to a claim of falsity of testimony, the requisite proof not only that the testimony was false but also that if the truth had been made known to the judge and jury at trial the judgment complained of would not have been rendered. Turner v. State, 52 Ala. App. 334, 292 So.2d 143 (1974)." Pitts v. State, 360 So.2d 736, 739 (Ala.Cr.App. 1978).
See also Goodman v. State, 412 So.2d 1264, 1266 (Ala.Cr.App. 1982) ("There was no evidence that . . . the alleged perjured testimony 'was on a matter of such importance that the truth would have prevented a conviction.' ").
"In effect, the writ of error coram nobis serves as a motion for new trial on the ground of newly discovered evidence."Summers, 366 So.2d at 339. Ordinarily, impeaching or contradicting testimony is not such newly discovered evidence as will warrant the granting of a new trial "though there are exceptional instances where such proffered proof may justify a reconsideration of the cause." Slaughter v. State, 237 Ala. 26,27, 185 So. 373 (1938). "[T]he overruling of a motion for a new trial based upon newly discovered evidence tending only to discredit the State's witnesses is not error unless upon the whole case it appears probable that the new evidence would change the result." Maund v. State, 254 Ala. 452, 462,48 So.2d 553 (1950). See also Davis v. State, 245 Ala. 589, 590,18 So.2d 282 (1944) ("Of course, the authorities are uniformly to the effect that it is not essential that newly discovered proof would likely have produced an acquittal. It suffices if it would, in all probability, raise a reasonable doubt as to the guilt of the defendant within the degree of culpability of which the jury finds him guilty.").
 " 'Impeaching testimony' is that designed to discredit a witness, or to reduce the effectiveness of his testimony by bringing forth evidence to show why faith should not be accorded his testimony. Blankenship v. Freeman (Okla.), 440 P.2d 744. Evidence is 'impeaching' so as to bar a new trial if it is outside the evidence *Page 576 
already given and impeaches that evidence by attacking the character, motives, integrity, or veracity of the witness who gave the testimony. Johnston v. Belk-McKnight Co., etc., 188 S.C. 149, 198 S.E. 395.
 "We think it clear that the evidence presented by the defendant on the motion for a new trial relative to the integrity or veracity of Hutto's testimony must be characterized as impeaching testimony.
 "The underlying reason denying the use of impeaching testimony as a basis for setting aside a verdict or judgment is that such testimony may be discovered in almost every case, and there should be a finality litigation. See Fries v. Acme White Lead Color Co., supra [201 Ala. 613, 79 So. 45]." Shepherd v. Southern Railway Company, 288 Ala. 50, 60-61, 256 So.2d 883 (1970).
"[T]he trial judge must 'believe' the evidence offered by the petitioner before he will be justified in granting relief."Howton v. State, 432 So.2d 548, 550 (Ala.Cr.App. 1983).
This appellant has, in effect and in fact, requested the circuit court to believe the recanted testimony of McCullars on the issue of the agreement while still maintaining that McCullars is lying about his participation in the robbery. At his trial, the appellant testified that McCullars' testimony was a "total fabrication" and a "falsehood." The appellant still maintained his innocence at the coram nobis hearing. However, at that hearing McCullars testified that his testimony concerning the facts and circumstances surrounding the robbery itself was true and correct and that he was telling it just like it happened. We find McCullars' recanted testimony incredible. " '[T]he well established principle [is] that to be entitled to the writ [of error coram nobis] the petitioner mustaver and prove that he was innocent of the crimes of which he stands convicted.' " Seibert v. State, 343 So.2d 788, 789 (Ala. 1977) (emphasis in original).
The judgment of the circuit court denying the petition for writ of error coram nobis is affirmed.
AFFIRMED.
All Judges concur.