IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2017 Session

## ERIC DEMOND MCCATHERN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2600    Cheryl A. Blackburn, Judge**

———————————————————————

**No. M2016-02143-CCA-R3-PC**

———————————————————————

The Petitioner, Eric Demond McCathern, was convicted after a jury trial of possession of twenty-six or more grams of a substance containing cocaine within one thousand feet of a school with the intent to sell or deliver, possession of drug paraphernalia, and aggravated burglary committed with the intent to commit possession of a substance containing cocaine with the intent to sell or deliver. After this court denied relief on direct appeal, the Petitioner filed a post-conviction petition alleging ineffective assistance of counsel. The Petitioner asserts that his trial counsel performed deficiently in advising him to plead guilty to aggravated burglary during trial because the plea essentially conceded elements of the contested drug charge. The Petitioner also asserts that trial counsel was deficient in failing to request a severance or move to suppress evidence. The post-conviction court denied relief. After a review of the record, we conclude that the Petitioner has not established prejudice, and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jessica Van Dyke, Nashville, Tennessee, for the appellant, Eric Demond McCathern.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Glenn Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

The Petitioner was tried twice for the offenses at issue, with the first trial resulting in a hung jury. The evidence presented at both trials was that a "Flex" team of Metropolitan Nashville police officers approached an area known as "the Hilltop," where they were aware that drug trafficking was taking place. Because of the area's topography, prior attempts to surprise drug activity had been unsuccessful, as police vehicles could be seen approaching from a distance. On the night of May 23, 2007, three officers parked several blocks away and approached on foot. They observed a stopped vehicle and saw two men, the Petitioner and his co-defendant, approach the vehicle. Officers suspected a drug transaction.

The Petitioner and the co-defendant walked away from the vehicle to a nearby apartment unit. The unit was completely dark and appeared abandoned. The Petitioner entered the waist-high window, and the co-defendant had put his torso through the window when police called for him to stop. The co-defendant appeared to put something down and moved away from the window. On the window sill, police discovered a gun; immediately inside, on the floor next to the window, were two digital scales and a small quantity of cocaine. Officers called for the Petitioner to exit the apartment, which he did through another window. The Petitioner was carrying $163. He did not have a telephone.

After being informed of his right to remain silent, the Petitioner stated that he did not live at the residence. Officers searched the residence, which appeared uninhabited. Only two pieces of furniture were in the apartment: plastic chairs placed immediately in front of the two windows. One chair had a jacket hung over the back of it. There was no edible food, no other furniture, and no other clothing or personal items. One room had trash and feces[1] on the floor. In the closed oven, officers found a large quantity of cocaine. Plastic sandwich baggies were laid out in the kitchen. Officers had not heard the oven door open while the Petitioner was inside the building, and they did not attempt to lift fingerprints from the oven. The Petitioner was in the apartment "[m]aybe a minute, maybe two."

---

[1] At the first trial, one of the officers testified that a puppy had apparently been kept in the room.

The manager of the apartment building testified at both trials. In the first trial, he testified that he had boarded up the door to the unit because he had rented it but the tenants never moved in, instead positioning a chair in front of a window. He testified that the leaseholder's name was Eric Davis. At the second trial, the manager merely testified that the apartment was rented but not occupied and that he had told the tenants that they needed to move in, turn on utilities, and otherwise live there. He testified that they had "taken possession of it" but only by putting a chair at a window and it appeared as though they were not living there.

At the beginning of the first trial, after the indictment was read, the Petitioner stated that he would plead guilty "to the burglary" and plead not guilty to the other charges. The trial proceeded without further colloquy regarding this plea. At the close of the State's proof, trial counsel moved for judgment of acquittal, arguing that there was no evidence that the Petitioner knew about the drugs in the oven. The trial court expressed its understanding that the Petitioner had pled guilty to burglary but not aggravated burglary, and then the judge proceeded to draw attention to the fact that as part of the burglary charge, the Petitioner had admitted that he was intending to commit a felony inside the residence. The court stated that based on the plea, it would deny the motion for judgment of acquittal on the other counts. The court also noted that because the Petitioner's plea was to a lesser-included offense, it would still charge the jury with the greater offense of aggravated burglary.

During closing argument, trial counsel argued that the Petitioner had acknowledged entering the abandoned building but that the State had not proven he had any possessory interest in the drugs in the oven. In response to the prosecution's argument emphasizing the underlying felony in the aggravated burglary count, trial counsel implied that the Petitioner was making an unsuccessful attempt to burglarize an existing drug house. The prosecutor noted that there was no real dispute regarding the quantity of drugs or the fact that the crime occurred in a school zone. In arguing that the elements were established, the prosecutor reminded the jury that the Petitioner had "pled guilty to burglary, which includes possession and intent, so he's pled guilty to that. He was acknowledging he was in the house, I guess, but that contains the component of committing a felony, which the felony is possession for resale."

The jury was unable to reach a verdict on any of the charges during the August 2010 trial, and the trial court declared a mistrial on all three counts. The case was retried on April 4-5, 2011, in front of a different judge.

During the second trial, the Petitioner, after the reading of the indictment,[2] pled guilty to aggravated burglary and pled not guilty to the remaining charges. No colloquy was held regarding the plea. After testimony that largely replicated that of the first trial, trial counsel argued that the vehicle involved in the alleged transaction never existed and argued again that the State had not proven possession. Trial counsel did not argue at the second trial that that the Petitioner was attempting to burglarize an existing drug house. In response, the State argued:

> I would ask you to look at the plea the defendant has made to you. And don't forget a component of that, as we discussed several times, is breaking into a facility with intent to commit this felony. His plea to Count 1, I submit to you, sheds great light on Count 2.

At the Petitioner's request, the trial court charged the jury with aggravated burglary. The Petitioner did not object to the trial court's statement that it would not charge any lesser included offenses on that count.

The jury convicted the Petitioner as charged of all three offenses, and he was sentenced to serve thirty-five years in prison. The Petitioner's appellate counsel challenged the sufficiency of the evidence and his consecutive sentences, and this court affirmed the convictions and sentences on appeal. *State v. Eric Demond McCathern*, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *1 (Tenn. Crim. App. Nov. 16, 2012) *perm. app. denied* (Tenn. Feb. 25, 2013).

## Post-Conviction

The Petitioner filed a timely post-conviction petition. At the post-conviction hearing, trial counsel testified that his records regarding the Petitioner's case had been destroyed. Trial counsel stated that the strategy at trial was to dissociate the Petitioner from the drugs in the oven because the drug charge carried a much longer sentence. Consequently, despite the fact that the Petitioner told trial counsel that he had used an alias to rent the apartment and was the rightful tenant, trial counsel did not attempt to assert standing to suppress the results of the search of the apartment. Trial counsel testified that the prosecution had not "put it together" that the property was rented by the Petitioner and that the Petitioner "didn't want to tell anybody that" because "it was obvious it was … a house that they were selling dope out of."

---

[2] The transcript submitted as a supplemental record on appeal begins with the reading of Count 3 of the indictment.

- 4 -

Trial counsel advised the Petitioner to plead guilty to burglary which "took Judge Norman back a little bit." Trial counsel felt the first trial, which resulted in a hung jury, was successful, so he used the same strategy at the second trial. He did not consider moving to sever the charges when the Petitioner pled guilty to the aggravated burglary charge.

The Petitioner testified that he had a seventh-grade education and that he found trial counsel when he was looking for attorneys through "other drug dealers." He confirmed that he had rented the apartment in question under the alias "Eric Davis." The Petitioner agreed with trial counsel that the strategy was to dissociate himself from the property in question. To that end, trial counsel told him to ask his mother to bring "some smaller pants and a shirt that's real raggedy" for trial in order to make him look like a burglar rather than a drug dealer. Trial counsel told him to plead guilty to the burglary charge but did not discuss the strategy further. The Petitioner did not understand the difference between burglary and aggravated burglary, so he pled guilty to burglary in the first trial. Prior to the second trial, trial counsel again told him to plead guilty to aggravated burglary, informing him it was "the only way that Judge Blackburn wouldn't hammer [him]." The Petitioner denied having ever been released from prison prior to his trial, but he later acknowledged that he "went on the run" in 2008. The Petitioner also testified that he only had three and not five prior felonies, although the transcript of the sentencing hearing reflects he had five prior felonies.

The post-conviction court denied relief, finding that the advice to plead guilty on the aggravated burglary charge was a reasonable strategic decision. The post-conviction court found that the Petitioner had not demonstrated that either the suppression motion or the severance motion would have been granted. The Petitioner appeals.

## ANALYSIS

The Petitioner argues that his trial counsel's advice to plead guilty to aggravated burglary was deficient because in pleading guilty, he was also conceding contested elements of the drug charge. He argues in the alternative that trial counsel should have sought a severance of the offense to which he pled guilty. As a third alternative, the Petitioner asserts trial counsel was deficient in failing to assert his standing to suppress evidence recovered in the search of the apartment.

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. Tenn. Code Ann. § 40-30-

110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. *Id.*

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland,* 466 U.S. at 688). As long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of errors so serious that "'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland,* 466 U.S. at 687).

The reviewing court should not second-guess strategic choices or measure counsel's performance by "20-20 hindsight." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). In reviewing counsel's professional decisions, a "'fair assessment … requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Goad*, 938 S.W.2d at 369 (quoting *Strickland*, 466 U.S. at 689). The failure of a particular strategy does not establish unreasonable representation. *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). "Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004).

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 694). In other words, "'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland,* 466 U.S. at 695). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Calvert*, 342 S.W.3d at 486 (quoting *Strickland*, 466 U.S. at 694).

## I. Guilty Plea

The post-conviction court found that trial counsel's advice to enter a guilty plea was a reasonable strategic decision. The Petitioner argues that there could have been no benefit to acknowledging guilt of the aggravated burglary when the offense included the admission of elements which were inculpatory for the contested drug charge.

We note that the Petitioner expressed a desire to enter a guilty plea in front of the jury but the trial court made no findings regarding whether it would accept the guilty plea. *See State v. Hawkins*, 519 S.W.3d 1, 40-41 (Tenn. 2017) (concluding that the trial court did not err in refusing to accept the defendant's guilty pleas during trial and that any error was harmless because evidence of the crimes would have been admissible despite the pleas); *Goosby v. State*, 917 S.W.2d 700, 707 (Tenn. Crim. App. 1995) (concluding that the trial court abused its discretion in rejecting the petitioner's guilty plea based on its erroneous understanding that it could not sever the co-defendant's case for trial); *Lawrence v. State*, 455 S.W.2d 650, 651 (Tenn. Crim. App. 1970) (noting that "[t]he right to plead not guilty has inherently and constitutionally within it the right to plead guilty"). No plea colloquy was held, and judgment on the plea was not entered. *See Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (noting that before a plea can be accepted, there must be an affirmative showing that it is intelligent and voluntary). Instead, the trial proceeded to opening statements and to the presentation of proof, and the trial court tasked the jury with determining the Petitioner's guilt on the aggravated burglary charge after conferring with the Petitioner's counsel, who requested the charge.

In *Boykin v. Alabama*, the United States Supreme Court noted that beyond being "itself a conviction" awaiting only judgment and determination of punishment, a guilty plea is also "a confession which admits that the accused did various acts." 395 U.S. 238, 242 (1969). The plea is a "'voluntary confession'" and also "'serves as a stipulation that no proof by the prosecution need b[e] advanced.'" *Id.* at 242 n.4 (quoting *Woodard v. State*, 171 So. 2d 462, 469 (Ala. Ct. App. 1965)). An acknowledgement of guilt is not the "functional equivalent" of a guilty plea when the State is still tasked with proving the

elements of the offense beyond a reasonable doubt. *See Florida v. Nixon*, 543 U.S. 175, 188 (2004) (concluding that counsel's concession of guilt was not the functional equivalent of a guilty plea because the State continued to bear the burden of proving the offenses beyond a reasonable doubt and the defense was able to cross-examine witnesses and attempt to exclude prejudicial evidence).

While the Petitioner here told the jury that he pled guilty to the charge, he agreed that the jury should be directed to determine whether each element of the offense had been satisfied and whether the State had met its burden of proving the Petitioner's guilt beyond a reasonable doubt. The Petitioner's statement during trial that he pled guilty to the charge was made upon trial counsel's advice, but because no judgment was entered upon it, we do not apply the principles relevant to analyzing ineffective assistance of counsel claims as they relate to a guilty plea. *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002) (observing that in order to establish ineffective assistance of counsel in a claim involving a guilty plea, a petitioner must establish that but for the deficiency, he would have proceeded to trial rather than entering the guilty plea). Absent any sort of plea colloquy, and considering the circumstance that the jury ultimately returned a verdict on the charge, the Petitioner's statement that he pled guilty essentially amounted to an in-court confession made at the behest of his attorney. Accordingly, we examine whether trial counsel's advice to acknowledge guilt in front of the jury was deficient and prejudicial.

In making his confession, the Petitioner effectively admitted that he had entered a habitation "with the intent to commit possession of a controlled substance containing cocaine with intent to sell or deliver," as charged in the indictment. *See* T.C.A. § 39-14-402, -403. To convict the Petitioner of the drug charge, the State had to show that the Petitioner knowingly possessed twenty-six grams or more of cocaine with the intent to sell or deliver and that the offenses occurred within one thousand feet of school property. *See* T.C.A. § 39-17-417(a)(4), (i), -432(b)(1). There was no dispute regarding the amount of cocaine at issue or that the location of the apartment within one thousand feet of a school. Accordingly, the only contested elements were whether the Petitioner possessed the cocaine, whether he did so with the intent to sell or deliver it, and whether he acted knowingly. By pleading guilty to the aggravated burglary, the Petitioner acknowledged that he intended to possess cocaine with the intent to sell or deliver it, essentially conceding that he acted with the requisite mens rea and that the cocaine was destined for resale. The Petitioner's confession of an intent to possess the cocaine in order to sell or deliver it also had bearing on the jury's determination of the sole remaining question, whether he actually obtained possession. Trial counsel should have been aware that he was conceding elements of the crime both because the elements were contained in the indictment and because the issue had been drawn to his attention at the previous mistrial. As post-conviction counsel noted, trial counsel could have argued that

the Petitioner was trespassing on the property without advising the Petitioner to admit that he intended to commit the felony of possession of cocaine. We conclude that trial counsel's advice to the Petitioner was deficient.

In evaluating prejudice, we determine whether there is a reasonable probability that, had the Petitioner not conceded that his presence in the apartment was accomplished with the intent to commit possession of cocaine with intent to sell or deliver, the fact-finder would have entertained reasonable doubt regarding his guilt on the possession of cocaine charge. *See Nesbit*, 452 S.W.3d at 787. The State introduced evidence that the Petitioner and co-defendant, after approaching a car in the parking lot, entered the seemingly abandoned apartment through the window. The co-defendant was stopped before he completed entry into the apartment and appeared to put something down, and police found cocaine, a gun, and two sets of scales immediately inside the window. The oven contained a larger quantity of cocaine, and plastic baggies were laid out on the kitchen counter. The apartment was empty except for plastic chairs placed in front of the two windows. Accordingly, the proof at trial established that the Petitioner entered an apartment that appeared to function solely as a cocaine dispensary and that he did so in the company of the co-defendant, who was carrying cocaine, a gun, and two sets of scales. While the State's proof in this case was certainly not overwhelming, we cannot conclude that there was a reasonable probability that the jury would have acquitted the Petitioner had he not conceded the elements of the aggravated burglary charge.

We note that the prejudice inquiry in this case is somewhat complicated by the testimony of both trial counsel and the Petitioner that the Petitioner, under a pseudonym, was the rightful tenant of the drug house. We examine prejudice in light of the principles laid down by *Strickland*, which directs us to examine whether the proceedings were such as to "justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691-92. In evaluating the correct standard by which to evaluate prejudice, *Strickland* examined whether the result of a proceeding was "rendered unreliable, and hence the proceeding itself unfair." *Id.* at 694. The *Strickland* formulation defines prejudice in terms of whether the errors were "sufficient to undermine confidence in the outcome." *Id.* "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Although the Petitioner benefitted at trial from the State's serendipitous failure to discover that he had a possessory interest in the property, we cannot say from the state of the record as it stands that the reliability of the proceedings is called into question.

We conclude that the Petitioner has not shown a reasonable probability that the jury would have entertained reasonable doubt regarding his guilt on the drug charge had

he not acknowledged guilt of the aggravated burglary charge. Accordingly, we deny relief.

## II. Severance

The Petitioner next claims he is entitled to a new trial because, in light of the guilty plea, trial counsel should have moved for a severance of the offenses. The Petitioner acknowledges that the offenses were subject to mandatory joinder under Tennessee Rule of Criminal Procedure 8(a), but he argues that he was entitled to severance under Tennessee Rule of Criminal Procedure 14(b)(2). *See* Tenn. R. Crim. P. 8(a)(1) (providing for mandatory joinder of offenses which are "based on the same conduct or arise from the same criminal episode"); Tenn. R. Crim. P. 14(b)(2) (providing for severance when "the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense").

We note that the severance issue is, to some extent, intertwined with the claim that counsel's advice to plead guilty was deficient. The fact that the guilty plea was entered before the jury was integral to counsel's strategy of dissociating the Petitioner from the drugs. Trial counsel intended the Petitioner to acknowledge to the jury that he was entering a habitation without consent of the owner in order to distance him from the items contained in the habitation. In entering the plea, the Petitioner was also admitting that he was entering the habitation in order to possess the cocaine in the oven with the intent to sell or deliver. While we have found trial counsel's advice regarding the plea to be deficient, the Petitioner has presented no evidence that the failure to move for a severance of the guilty plea was deficient in itself. Pleading guilty to aggravated burglary in front of the jury was part and parcel to the strategy of dissociating the Petitioner from the apartment. We note here that the rules regarding severance anticipate issues arising from the possibility of multiple *trials*, not separate *pleas*. Tenn. R. Crim. P. 8(a)(2) ("A defendant shall not be subject to separate *trials* for multiple offenses falling within Rule 8(a)(1) …." (Emphasis added)); Tenn. R. Crim. P. 14(b)(2) ("If two or more offenses are joined or consolidated for *trial*…" (Emphasis added)).

In any event, the Petitioner presented no evidence that the severance would have been proper or would have been granted. When a claim of ineffective assistance of counsel is premised on the failure to raise an issue, the reviewing court may address the merits of the issue to assess prejudice. *See Carpenter*, 126 S.W.3d at 887-88. The post-conviction court found that there would have been no basis for severance under Rule 14, and the Petitioner has cited no case-law to show that a severance should have been granted. *See Jesse Wade Glover v. State*, No. W2010-01679-CCA-R3-PC, 2012 WL 12932004, at *4 (Tenn. Crim. App. June 6, 2012) (denying relief for alleged deficiency in failing to ask for severance when the petitioner did "not offer any evidence to support

that a severance in this case would have been proper"); *Black v. State*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990) (denying post-conviction relief for failure to file severance when there existed "neither factual nor legal basis for the granting of a severance"). Accordingly, the Petitioner is not entitled to relief on this issue.

## III. Suppression

As an alternate theory, the Petitioner asserts that his trial counsel should have acknowledged his possessory interest in the apartment, which would have given him standing to move for suppression of the evidence. The State counters that the Petitioner is not entitled to relief because such a motion would not have succeeded.

In *Vaughn v. State*, defense counsel did not a file a motion to suppress because "it would have directly contradicted [the petitioner's] defense of mistaken identity." 202 S.W.3d 106, 121 (Tenn. 2006). In particular, the petitioner would have had to admit that he was in Alabama in order to assert standing for the motion. *Id.* The Tennessee Supreme Court concluded that "[g]iven [the petitioner's] insistence that he was never in Alabama, counsel's decision not to file a motion to suppress the guns was a legitimate tactical decision." *Id.* Tactical decisions, of course, are entitled to deference on post-conviction review, and counsel's strategic choices are not to be measured by 20-20 hindsight. *Id.*

Here, as in *Vaughn*, in order to assert standing, the Petitioner would have had to acknowledge an inculpatory fact: that he was the "Eric Davis" who had leased the apartment. Trial counsel testified that the Petitioner did not want to admit that he was the leaseholder because he wanted to disclaim any possessory interest in the drugs in the oven. This is a reasonable tactical choice. Moreover, the Petitioner disclaimed ownership of the apartment at the scene, the owner of the premises testified that he had boarded up the door to exclude the leaseholder, and the apartment, which was void of power, personal items, and furniture, appeared abandoned. We conclude that success in the motion to suppress was, to put it mildly, unlikely. *See State v. Talley*, 307 S.W.3d 723, 731 (Tenn. 2010); *State v. Ross*, 49 S.W.3d 833, 842 (Tenn. 2001) (holding that "a defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession"); *see also State v. Christina Lee Jones Thomas*, No. E2013-01531-CCA-R3-CD, 2014 WL 3440687, at *6 (Tenn. Crim. App. July 14, 2014) (noting that "[t]he test for abandonment is whether the lessee had a reasonable expectation of privacy in the property as of the date of the search"); *State v. John Holliday*, No. C.C.A. No. 6, 1990 WL 98624, at *1 (Tenn. Crim. App. July 18, 1990) (concluding that a search was reasonable when the defendant had abandoned the trailer by leaving and removing his property despite the fact

that three days remained on the lease at the time of the search).  Given the fact that possession of the drugs could be attributed to the leaseholder, the decision not to assert standing to contest the search was a reasonable strategic decision, and the motion to suppress was unlikely to succeed.  The Petitioner has demonstrated neither deficiency nor prejudice.

## CONCLUSION

Based on the foregoing reasoning, we affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, JUDGE